Clayton, Appellant, *v.* National Electric
Products Corporation.

Argued March 17, 1966. Before MUSMANNO, JONES,
COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

376

*Ralph E. Smith,* with him *Rowley, Smith, Rowley &
Lewis,* for appellants.

*Oran W. Panner,* with him *Panner, Holland and
Autenreith,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, May 24, 1966:

This is an action of assumpsit by the beneficiaries
of a group life insurance certificate against two insur-
ance companies and the former employer of the dece-
dent.

Martin M. Clayton had been employed by National
Electric Products Corporation (National Electric) in
1935. In May of that year, National Electric entered
into a contract with The Equitable Life Assurance So-
ciety of the United States (Equitable) for group cov-
erage for its employees. This group coverage was of
the type where both employer and employee contribut-
ed toward the payment of premiums. At its inception,
this group coverage was for $8,000 and was subsequent-
ly increased to $15,000 on July 1, 1947. Mr. Clayton
retired on February 1, 1949, having reached the age
of 65, and, as the contract between National Electric
and Equitable provided that retired employees could
retain their group coverage, Mr. Clayton elected to do
so.

In 1959, National Electric was purchased by H. K.
Porter Company, Inc. (H. K. Porter) and the group

coverage formerly underwritten by Equitable was replaced by and thereafter underwritten by Metropolitan Life Insurance Company (Metropolitan).

Early in 1961, the International Brotherhood of Electrical Workers No. 1073 (I.B.E.W.), representing the employees of National Electric and H. K. Porter, requested H. K. Porter to make group insurance a part of its labor-management agreement. Prior to this time, group insurance had been outside the labor agreement. The union wanted a non-contributory group life insurance policy, that is, one on which H. K. Porter paid the entire premium. Mr. Clayton, during his employment, had been a member of the I.B.E.W. and the union was particularly desirous that this non-contributory group life insurance be made available to retired employees.

Mr. Clayton received a letter dated May 17, 1961 (this letter had been sent to all retired employees) from H. K. Porter informing him that an agreement had been reached between the union and the company, relative to group insurance for retired employees, and that this agreement had been made part of the contract. The pertinent parts of the letter read as follows:

"Effective June 1, 1961, if you are receiving pension benefits under the Company's Retirement and Disability Program, the Company is making available to you a Term Life Insurance policy in the amount of five thousand dollars ($5,000.) in the place of any company policy or policies you may now hold, which will be entirely paid for by the Company. You will no longer have to make any payments, such as you have in the past, for this insurance.

"In order to insure the prompt handling of your policy under Company-paid insurance plan, please sign and return immediately the enclosed application in the self-addressed stamped envelope. Failure to return the

signed application promptly, which authorizes the Union to enter into a binding agreement relative to the acceptance of this five thousand dollar ($5,000) Term Life Insurance in lieu of the fifteen hundred dollar ($1,500) (sic) policy and any and all prior insurances, may result in loss of such benefits.

"Please verify the correctness of all names and addresses, paying particular attention to your beneficiary's name and relation to you, if any. Errors in designation of beneficiaries can result in unnecessary hardship and delays during the bereavement.

"A letter of receipt verifying that you qualify for the five thousand dollar ($5,000) policy will be mailed within ten (10) days after receipt of the signed applications."

Enclosed with the aforementioned letter to Mr. Clayton was an application, authorizing the union to enter into a collective bargaining agreement pertaining to group life insurance. On May 22, 1961, Mr. Clayton signed the application and returned the same to H. K. Porter, the pertinent parts reading as follows: "I desire to be insured as indicated by my signature below for the Group Insurance described in the Company announcement dated May 17, 1961, a copy of which I have received, and I agree to accept such insurance coverage in full satisfaction of all claims."

On May 29, 1961, the union and the company executed a new contract in part providing:

"Whereas . . . the Union represents to the Company that it is authorized to bargain for and agree on behalf of both its active and retired members in connection with which such of the retired members as are readily available have signed an Authorization and Consent in connection herewith.

"Now, Therefore, the Company, and the Union acting on behalf of all active and retired members of the bargaining unit, record this Agreement, conditioned on

the authority of each party to bind all those it purports to represent, and agree as follows:

"Effective June 1, 1961, the following insurance coverages shall prevail in complete replacement of any insurance coverage previously claimed, all claims for which are hereby waived and released: 1. Former employees receiving benefits under the Company's Retirement and Disability Plans shall receive, at the total cost of the Company, term life insurance in the amount of five thousand dollars ($5,000.00)."

Following the execution of the agreement with the union, H. K. Porter and Metropolitan entered into a new group insurance contract providing that effective June 1, 1961, retired employees would receive $5,000 non-contributory life insurance coverage. The material parts of the master policy stated: "Effective June 1, 1961, Group Policy No. 17303-G bearing date of June 1, 1961 and issued to H. K. Porter Company, Inc. is hereby endorsed to substitute for Section 4 of said Group Policy, the following: No employee shall contribute to the cost of the insurance hereunder . . . . Retired Employees— . . . If an Employee is retired, . . . the amount of his Life Insurance shall be $5,000.00."

On June 16, 1961, Martin M. Clayton died, and Metropolitan tendered $5,000 in full payment to the beneficiaries under the $5,000 non-contributory policy executed on June 1st of that year. The beneficiaries accepted payment under the condition that accepting said payment would not prejudice any of their rights under the contributory policy, and, subsequently, filed a claim for the $15,000. The insurer refused to pay, alleging the contributory policy had been cancelled on June 1st, 1961, pursuant to written notice given on May 18, 1961, and that the contributory policy had been exchanged for the non-contributory one.

Motions for judgment were filed by both appellants and appellees and were argued before a court en banc.

Judgment on the pleadings was entered for the appellees (defendants) and this appeal followed. We agree with the conclusions reached by the court below, and correctly stated: "The exhibits attached to the pleadings support the conclusion that Clayton, in writing, authorized the Union to bargain for him. His beneficiaries are therefore bound by what Clayton authorized it to do for him. Clayton, on May 22nd, 1961, in writing, agreed to accept $5,000 insurance coverage 'in full satisfaction of all claims.' To us the meaning is clear and explicit. Perhaps the statement might have said of all claims under any other certificate of insurance. However, at that time, Clayton had no claim, and he had received previously written notice that the new policy was 'in place of any company policy or policies you may now hold . . .' He held only the $15,000 certificate. Under it he contributed. The new certificate was non-contributory. Under the circumstances and the exhibits the only permissible conclusion is that Clayton accepted the $5,000 non-contributory policy in lieu of the policy to which he contributed a part of the premium.

"Plaintiffs have no enforceable cause of action in any event under the law as applied in Pennsylvania to the group insurance."

In *Miller v. The Travelers Ins. Co.*, 143 Pa. Superior Ct. 270, 17 A. 2d 907 (1941), the plaintiff averred that she was the beneficiary of a group accident policy which also covered accidental death and a group life policy covering employees who joined and authorized premium payments to be deducted from their wages. Defendant admitted the execution of the policies but, by way of new matter, averred that the group policies had been cancelled by agreement between defendant and the Lehigh Valley Railroad, the husband's employer, and that that notice had been given to all employees. Plaintiff's reply admitted this, but denied the cancella-

tion was effective, as it was made without her husband's (the insured employee) consent. The Superior Court did not agree with plaintiff's contention, stating:

"It has been uniformly held, in decisions dealing with group life and accident insurance policies substantially similar to those here involved, that the insurer and the employer are the primary contracting parties. Whether or not a policy shall continue depends on their will. It is not within the power of the beneficiary to keep a group contract of insurance in force or to abrogate it. The insured employee or his beneficiary have no greater rights than are provided in the policy, certainly no vested right which would prevent cancellation by mutual agreement between the insurer and the employer, especially where reasonable notice of cancellation is given to the employee. A third party beneficiary in an ordinary contract is subject to the limitation of its terms as he has no greater rights under it than are provided in the contract itself: Restatement of the Law, Contracts, Sec. 140; Grim et al. v. Thomas Iron Co., 115 Pa. 611, 8 A. 595; Thull v. Equitable Life Assur. Soc., 178 N.E. 850, 851.

"In Lancaster v. The Travelers Ins. Co., (Ga.), 189 S.E. 79, the suit was by an employee claiming disability benefits as of June 9, 1933, under a master or group policy which had been previously canceled by agreement between the insurer and the employer on its anniversary date. The employee refused to surrender his policy and continued to pay the employer the amount he had been paying under the policy, but the premiums were not forwarded to the insurance company. In affirming a judgment on a directed verdict for defendant, the court held that the employer was not the agent for the insurance company, and that the holders of the certificates issued thereunder had no vested right to

a continuation of such policy over the objection of the employer."

We cited that case with approval in *Poch v. Equit. L. Assur. Soc.*, 343 Pa. 119, 22 A. 2d 590 (1941), and went on to say: "Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere; further, that in the absence of notice, an agreement of cancellation or modification like that here entered into between the Association and the Society is, as to such employee, legally ineffective to relieve the insurance company from liability under the original policy. In addition to the decisions referred to, see: Crawford, Group Insurance, section 41; Hanft, Group Life Insurance: Its Legal Aspects, 2 Law & Contemp. Prob. 70; Insurance—Recent Trends in Group Insurance, 12 N.C.L. Rev. 166; Group Insurance: Some Legal Problems, 26 Va. L. Rev. 487; Cancellation of Group Insurance Policy By Employer Without Consent of Employee, 49 Y. L. J. 585."

This seems to be precisely what happened in the instant case. The retired employee was given notice and exercised the privilege given to him to take the $5,000 non-contributing plan, as noted by his aforementioned acceptance. The cancellation of one plan and acceptance of the other by the decedent occurred

before any liability had been incurred. See 29A Am. Jur., Insurance, §1782, p. 856. We conclude appellants' contentions that Mr. Clayton had neither authorized the union to release any interest in the original group policy, nor, himself, released any interest in the original group policy, to be without merit. Mr. Clayton had notice of what was going to happen on the 17th day of May and accepted this by his letter dated May 22nd. This was certainly sufficient notice of what was about to take place.

Judgment affirmed.

Mr. Justice MUSMANNO dissents.