George M. NACHWALTER and Steven M. Falk, as Trustees of the Nachwalter, Christie & Falk, P.A. Profit Sharing Plan and Trust, and as Trustees of the Nachwalter, Christie & Falk, P.A., Pension Plan and Trust, Plaintiffs-Counter Defendants-Appellees,

v.

Joyce Ellen CHRISTIE, individually and as Personal Representative of the estate of Irwin G. Christie, Defendant-Counter Plaintiff-Appellant.

Nos. 85–5615, 85–6001.

United States Court of Appeals,
Eleventh Circuit.

Dec. 9, 1986.

Blank, Rome, Comisky & McCauley, William Berger, Nancy J. Cliff, Stewart A. Merkin, Law Office of Stewart A. Merkin, Miami, Fla., for Christie.

James J. Kenny, Kenny, Nachwalter & Seymour, Miami, Fla., for Nachwalter.

Before RONEY, Chief Judge, KRAVITCH, Circuit Judge, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

The issue before this court is whether the trustees of pension and profit sharing plans governed by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, may be estopped from enforcing the written terms of the plans by oral representations they allegedly made to a beneficiary. We affirm the district court 611 F.Supp. 655 and hold that the written terms of the plans cannot be modified by oral agreements. In addition, we hold that appellees are not entitled to fees on appeal.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

## I.

This declaratory judgment action was brought by the trustees of two employee benefit plans (the Plans)[1] that are sponsored by the law firm of Nachwalter, Christie & Falk, P.A. (the Firm) and governed by ERISA, 29 U.S.C. §§ 1001 *et seq.* The trustees sued appellant Joyce Christie, individually and as personal representative of the estate of her deceased husband, Irwin G. Christie, a former participant in the Plans, in order to determine the extent of their liability to her.

Irwin was a stockholder, employee, officer and director of the Firm from its inception until November 30, 1980, the effective date of his resignation. Until his resignation, he also was one of the three trustees of the Firm's two employee benefit plans and was one of the principal beneficiaries of the Plans. His interest in the Plans, which is 100% vested, represents approximately 30.35% of the net assets held in trust under the two Plans.

Under the terms of the Plans, the date on which an employee withdraws his funds from the Plans also serves as the date for valuing both the Plans' net assets and the employee's share thereof. The Plans provide employees with some, albeit a limited, ability to select between withdrawal/valuation dates. In particular, Irwin could have requested permission to withdraw his funds from the Plans for their value as of June 30, 1980; whether Irwin would have received the funds based on this date was in the total discretion of the Plan Administrator. The district court found, however, that Irwin did not make this written request for an immediate distribution. Instead, Irwin left his funds in the Plans in order to benefit from the increase in the Plans' value that had occurred since June 30, 1980. Pursuant to the Plans, under these circumstances Irwin was not entitled to remove his funds from the Plans until he became a "Withdrawn Participant." This occurred on June 30, 1982. Therefore, under the Plans, June 30, 1982 should serve

as the valuation date for determining Irwin's share.

Joyce Christie alleges, however, that Irwin and the trustees orally agreed that Irwin could remove his assets on June 30, 1981, and argues that this date should be the valuation date. There is nothing in the Plans that would permit use of the June 30, 1981 valuation date. And while the Plans do contain provisions that would have allowed Irwin to request that the Plans be amended to change the valuation date, Irwin did not pursue, and the Firm did not make, such an amendment.

The controversy over the valuation date erupted as a consequence of the trustees' June 30, 1981 investment of a substantial portion of the Plans' funds in marketable securities held in street name by First State Securities Corp. (First State). First State engaged in unauthorized transactions on behalf of the funds between June 30, 1981 and July 24, 1981. As a result, the net assets in the Plans plummeted; Irwin's share fell from $196,770.72 on June 30, 1981 to $83,364.46 on June 30, 1982.

After the drop in the Plans' value, trustees Nachwalter and Falk notified Irwin that he would be paid pursuant to the Plans, with the value of his assets determined as of June 30, 1982. Irwin objected, asserting that the trustees had agreed to the June 30, 1981 valuation date. Irwin died on January 8, 1982. Joyce, Irwin's beneficiary under the Plans in the event of his death, sought to recover the benefits based on the June 30, 1981 valuation date, claiming that the trustees of the two Plans are estopped from enforcing the written terms of the funds by the alleged oral agreement with her husband to employ June 30, 1981 as the valuation date. The trustees claimed that the proper valuation date is June 30, 1982 and brought the instant declaratory judgment action. The district court ruled in the trustees' favor and held that the June 30, 1982 valuation date governs on the ground that under ERISA neither oral agreement nor informal exchange may be used to modify the

1. One plan was a pension plan and the other was a profit sharing plan.

written terms of the Plans. The court made no findings regarding the existence of the alleged oral agreement.[2] Pursuant to a pretrial stipulation, the district court also awarded attorney's fees to the trustees.

## II.

The main issue on appeal is whether written employee benefit plans governed by ERISA may be modified by oral agreements.[3] This issue is one of first impression in this circuit; to our knowledge, no other federal circuit court has ruled on this question.

Appellant argues that this court should employ the doctrine of estoppel to enforce the alleged oral modification of the Firm's two ERISA-governed employee benefit plans. Appellant cannot prevail on this claim. Appellant does not cite a single case under either ERISA or a related federal labor law in which a federal circuit court has enforced an oral agreement that modifies the terms of an employee benefit plan.[4] In fact, appellant concedes that in this case ERISA preempts state common law doctrines such as estoppel.[5] *See Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986) (ERISA preempts state common law causes of action as they relate to employee benefit plans); *see also Holland v. Burlington Industries, Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 326–28 (2d Cir.1985); *Blau v. Del Monte*

*Corp.*, 748 F.2d 1348, 1356 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). Instead, at oral argument appellant contended that since Congress intended the federal courts to fashion a body of federal common law to govern ERISA cases, *see Holland,* 772 F.2d at 1147 n. 5; *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1501–02 (9th Cir.1985), we should create a federal common law doctrine of estoppel which permits oral modification of ERISA-protected Plans.

Appellant's argument fails, however, as it is based on a misunderstanding of the proper use of federal common law. The claim that Congress intended for the federal courts to create a body of federal common law to govern ERISA cases does not, as appellant suggests, give a federal court *carte blanche* authority to apply any prevailing state common law doctrine it chooses to ERISA cases. A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court. *See* C. Wright, *Law of Federal Courts* § 60, at 283–84 (3d. ed. 1976); *see also Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Furthermore, even when it is appropriate for a federal court to create federal common law, it may use state common law as the basis of the federal common law

2. The trustees agree that Irwin wanted the June 30, 1981 valuation date but contend that they told him that payment would be pursuant to the Plans.

3. We do not, and need not, reach the issue of whether there was an oral agreement to use June 30, 1981 as the valuation date.

4. As support for her claim that the district court should have applied the doctrine of estoppel appellant cites *Kann v. Keystone Resources, Inc.,* 575 F.Supp. 1084 (W.D.Pa.1983). *Kann* is inapposite to the issue in this case. *Kann* did not involve an oral modification of an ERISA plan. *Kann* involved the application of estoppel to prevent the trustees of an ERISA plan from denying to a former employee benefits to which he was entitled under ERISA merely because the payments to the Plan were not formally

authorized as allegedly was required under corporation law. *Id.* at 1090. Thus, unlike here, in *Kann* estoppel was applied in order to enforce the written terms of the ERISA plans. *Id.* 1093–94. *Kann,* therefore, does not provide support for appellant's position that estoppel can be used to override the terms of a written ERISA plan.

5. 29 U.S.C. § 1144(a) provides in pertinent part that: "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

only if the state law is consistent with the policies underlying the federal statute in question; *see Lincoln Mills,* 353 U.S. at 457, 77 S.Ct. at 918; *Scott,* 754 F.2d at 1502; federal courts may not use state common law to re-write a federal statute.

■ Applying these principles, we conclude that we cannot create federal common law in this case because ERISA specifically addresses the issue before this court. ERISA expressly requires that employee benefit plans be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). We agree with the district court that this requirement that ERISA plans be "maintained" in writing precludes oral modifications of the Plans; the common law doctrine of estoppel cannot be used to alter this result. *Cf. Mo-Kan Teamsters Pension Fund v. Creason,* 716 F.2d 772, 777 (10th Cir.1983), *cert. denied,* 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984) (oral modification of collective bargaining agreement prohibited by Labor Management Relations Act); *San Pedro Fishermen's Welfare v. Di Bernardo,* 664 F.2d 1344, 1345 (9th Cir.1982) (Labor Management Relations Act's requirement that the terms of a welfare trust fund be set forth in writing precludes oral modification); *Lewis v. Seanor Coal Co.,* 382 F.2d 437, 443–44 (3d Cir.1967) (same), *cert. denied,* 390 U.S. 947, 88 S.Ct. 1035, 19 L.Ed.2d 1137 (1968).[6]

■ The conclusion that under ERISA oral modifications of employee benefit plans are impermissible is buttressed by the observation that Congress expressly prohibited informal written amendments of ERISA plans. ERISA requires that each plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). By explicitly requiring that each plan specify the amendment procedures, Congress rejected the use of informal written agreements to

modify an ERISA plan. *See Johnson v. Central States, Southeast and Southwest Areas Pension Funds,* 513 F.2d 1173, 1174–75 (10th Cir.1975) (benefits may not be enforced according to a booklet and letter that are inconsistent with the terms of a written pension plan). Reading the "written agreement" provision of subsection 1102(a)(1) in light of subsection 1102(b)(3)'s requirement of formal written amendments procedures necessitates our conclusion that subsection 1102(a)(1) of ERISA precludes oral modifications of employee benefit plans.

■ Furthermore, even if we were to apply federal common law in this case, we would not create federal common law to permit oral modifications of these Plans. Federal common law must be consistent, not only with the language, but also with the policies of the federal statutory scheme in question. *See Lincoln Mills,* 353 U.S. at 456–57, 77 S.Ct. at 918; *Scott,* 754 F.2d at 1502. A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Scott,* 754 F.2d at 1501. This goal would be undermined if we permitted oral modifications of ERISA plans because employees would be unable to rely on these plans if their expected retirement benefits could be radically affected by funds dispersed to other employees pursuant to oral agreements. This problem would be exacerbated by the fact that these oral agreements often would be made many years before any attempt to enforce them. In fact, the importance of strictly adhering to the written terms of employee benefit plans is nowhere better illustrated than in a case such as this: here appellant seeks to benefit from an alleged oral agreement made by a former trustee and former co-owner of the Firm, a man who could be expected to know, and to follow, the writ-

6. *Di Bernardo,* 664 F.2d at 1344 and *Lewis,* 382 F.2d at 437, concern § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186 (1981). The written agreement require-

ment for pensions under the LMRA is similar to the written agreement requirement of ERISA, 29 U.S.C. § 1104(a)(1). *See* Hugh v. Overly, *445 F.Supp. 946, 947 n. 1 (W.D.Pa.1978).*

ten terms of the Plans. Enforcing this agreement would operate to the detriment of other beneficiaries of the Plans and would endow Irwin with a range of options under the Plans—in particular, the ability to select a valuation date—that is not available to the other beneficiaries. Thus, appellant has neither equity nor the law on her side. The district court's refusal to permit oral modification of the Plans is affirmed.

### III.

Appellees contend that they should receive attorney's fees on appeal. Before trial, the parties stipulated "that the prevailing party or parties would be entitled to reasonable attorney's fees ..." the amount of fees to be "assessed on the basis of affidavits submitted after the conclusion of the trial when the outcome is known." Although the pre-trial stipulation does not provide for awarding attorney's fees on appeal, appellant does not assert that this stipulation precludes the awarding of these fees. Nor does appellant contest appellees' implicit assumption that ERISA permits the awarding of attorney's fees on appeal. Instead appellant argues on the merits that such an award would be inappropriate in this case because the appeal was not taken in bad faith and has merit. We must address appellees' implicit assumption that we can award fees on appeal under ERISA, however, before we can consider whether we should award them in this case.

▋ Section 502(g) of ERISA, 29 U.S.C. § 1132(g), governs the awarding of attorney's fees. It provides in pertinent part that: "[i]n any action under this subchapter ... by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Statutory provisions for attorney's fees such as this generally allow the award of fees for the costs of appeal. *See Newhouse v. Robert's Ilima Tours, Inc.,* 708 F.2d 436, 441 (9th Cir.1983) (under the Fair Labor Standards Act attorney's fee awards may include fees for appellate services); *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839 & n. 11 (9th Cir.1982)

(under section 4 of the Clayton Act fee awards may include fees for time spent on appeal). Nothing in the broad language of subsection 1132(g)(1) suggests that Congress intended to limit the fee awards in ERISA cases to those incurred at trial. In fact, the statement in subsection 1132(g)(1) that fee awards are to be determined by "the court," as opposed to "the district court," suggests that Congress intended for circuit courts also to make fee awards. We therefore hold that subsection 1132(g)(1) allows the recovery of attorney's fees and costs incurred in an appeal. *See Secretary of Department of Labor v. King,* 775 F.2d 666, 670 (6th Cir.1985) (per curiam); *Operating Engineers Pension Trust v. Charles Minor,* 766 F.2d 1301, 1305 (9th Cir.1985); *Carpenters Southern California Administrative Corp. v. Russell,* 726 F.2d 1410, 1417 (9th Cir.1984); *Ford v. New York Central Teamsters Pension Fund,* 642 F.2d 664 (2d Cir.1981) (per curiam); *see also Plumbers' Pension Funds v. Domas Mech. Contractors,* 778 F.2d 1266, 1271 (7th Cir.1985) (attorney's fees on appeal awarded under subsection 1132(g)(2)(D) of ERISA).

Having determined that this court may award attorney's fees on appeal, we also must determine what standard should govern such an award. Unlike fee shifting provisions in other statutes, subsection 1132(g)(1) does not indicate what criteria should govern a court's determination of when to make fee awards and the legislative history furnishes no guidelines. *See* Note, *Attorney's Fees Under ERISA: When Is An Award Appropriate?,* 71 Cornell L.Rev. 1037, 1042, 1050 (1986) [hereinafter Note, Attorney's Fees Under ERISA]. Virtually all circuits, including this one, have adopted five factors as the "nuclei of concerns" that should govern a district court's determination of whether to award attorney's fees at the trial stage. Note, *Attorney's Fees Under ERISA,* supra, at 1042; *see, e.g., McKnight v. Southern Life and Health Insurance Co.,* 758 F.2d 1566, 1571–72 (11th Cir.1985); *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). These factors, which should guide but not control the district court's

decision, are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Iron Workers,* 624 F.2d at 1266; *see McKnight,* 758 F.2d 1571–72; *Fine v. Semet,* 699 F.2d 1091, 1095 (11th Cir.1983).[7]

We hold that these five factors also should guide appellate courts' determinations of whether to award fees on appeal. *See Russell,* 726 F.2d at 1417. In applying these criteria, however, courts should bear in mind ERISA's essential remedial purpose: to protect the beneficiaries of private pension plans. *See Dennard v. Richards Group, Inc.,* 681 F.2d 306, 319 (5th Cir.1982). Adherence to this policy often counsels against charging fees against ERISA beneficiaries since private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose. *Id.; accord Leigh v. Engle,* 727 F.2d 113, 139 n. 39 (7th Cir.1984); *Operating Engineers,* 766 F.2d at 1305; *cf.* Note, *Attorney's Fees Under ERISA, supra,* at 1055–56 (arguing that ERISA policy concerns would be served by making it more difficult for ERISA defendants to obtain fee awards than it is for ERISA plaintiffs).

Applying the *Iron Workers* factors to the case before us, we conclude that the trustees are not entitled to fees on appeal. Appellant's claim was neither frivolous nor pursued in bad faith; thus the first factor weighs in appellant's favor. We do not have sufficient evidence to apply factors two and three. And although appellee relies on factor four, application of this factor also counsels against awarding fees on appeal because this case was one of first impression and "resolved a significant legal question regarding ERISA itself."[8] *See Iron Workers,* 624 F.2d at 1266. Finally, although it would appear that under the relative merits test of factor five appellee should receive fees, the application of this factor does not alter our conclusion. There was no case law by this or any other circuit court on the issue of whether oral modifications of ERISA plans are permissible. In such circumstances we will not employ our determination that appellant's claim is incorrect as a basis for assessing fees against her. *See Leigh,* 727 F.2d at 139 n. 39. We hold that appellees are not entitled to receive attorney's fees on appeal.[9]

AFFIRMED.

---

7. Other circuits have endorsed similar guidelines. *See, e.g., Russell,* 726 F.2d at 1415; *Marquardt v. North American Car Corp.,* 652 F.2d 715, 717 (7th Cir.1981); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978).

8. The fact that appellees brought this suit as a declaratory judgment action instead of waiting for appellant to sue to enforce the oral agreement in a coercive suit suggests that appellees also thought that appellant's claim was not frivolous and that it presented an unresolved legal question.

9. Our decision not to allow fees on appeal does not affect appellees' award of fees at the trial level.