**In the Matter of READING COMPANY, Debtor.**

**Bankruptcy No. 71–828.**

United States District Court, E.D. Pennsylvania.

March 25, 1987.

See also 59 B.R. 1011.

John W. Morris, Philadelphia, Pa., for plaintiff.

Alan Kleinburd, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Prior to its bankruptcy reorganization, Reading Company operated a railroad and covered its active and retired noncontract employees with a group life insurance plan. The question presently raised is whether Reading could terminate this plan with respect to its retired employees when it reorganized under the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 701 *et seq.* It comes before the court in the context of the government's demand for repayment of funds advanced to pay life insurance premiums for the benefit of the retired, noncontract employees.

Reading provided its covered employees with a life insurance booklet which stated:

It is the present expectation of Reading Company that this Group Life Insurance Plan will be continued indefinitely to benefit you and your family. The contract of insurance, however, provides for the discontinuance of the plan on the part of either New York Life Insurance Company or Reading Company if future conditions should make it necessary or advisable.

By the terms of the insurance contract, Reading had the right to terminate the policy by giving written notice to New York Life Insurance Company. On May

26, 1976, Reading mailed a notice of termination to its retirees effective June 30, 1976. This notice also apprised the retirees of their right of conversion.

On May 1, 1979, the United States Railway Association loaned Consolidated Rail Corporation, Conrail, money to purchase an annuity to continue life insurance coverage for Reading's retired noncontract employees. The United States and Reading have filed motions for summary judgment on the issue of whether Reading is liable to the government for the cost of the annuity plus interest. The government claims that payment of life insurance premiums is a valid administrative claim against Reading. Reading asserts that it had a contractual right to terminate its life insurance plan when it ceased rail operations; therefore, it is not obligated to reimburse the government.

Conrail was created by the Rail Act to receive substantially all of the rail assets of bankrupt regional railroads. 45 U.S.C. §§ 741, 743. Under the Rail Act, Conrail is required to pay the "current obligations" of debtor railroads from proceeds of loans made by the United States Railway Association, a governmental entity. *Id.* at § 721(h). The debtor railroads are to reimburse Conrail which, in turn, repays the Association. If, however, Conrail is not reimbursed within three years, its indebtedness to the Association is forgiven and the Association possesses a direct claim against the debtor railroad. *Id.* at § 721(h)(6).

Section 211(h) of the Rail Act authorizes the Association to make loans to Conrail for amounts necessary to continue life insurance coverage existing at the time rail assets are conveyed to Conrail "as required and limited by section 734(b)(6)(B)...."

*Id.* at § 721(h)(1)(A)(viii).[1] Section 743(b)(6)(B), enacted on November 4, 1978, provides that Conrail shall maintain life insurance coverage for former railroad employees who retired prior to April 1, 1976. In an effort to clarify matters, Congress also deemed amounts required for the payment of life insurance premiums to be administrative claims. 45 U.S.C. § 743(b)(6)(B). This result, however, is subject to a finding by the district court that payment of life insurance premiums is an "enforceable contractual obligation[ ]" of the debtor railroad. Act of November 4, 1978, P.L. 95-597, uncodified but appearing in note to 45 U.S.C. § 743.

Thus, the issue of Reading's liability to the government is dependent upon whether the retired employees had a vested right that obligated Reading to continue their life insurance coverage after it ceased rail operations. Reading and the government disagree over the controlling law and the result under that law.

The government contends that the interpretation of Reading's life insurance plan is governed by federal common law under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Reading argues that ERISA does not preempt state law interpretation of the life insurance plan and, therefore, Pennsylvania law applies.[2]

■ It is undisputed that Reading's group life insurance plan was an "employee welfare benefit plan" as defined in ERISA. 29 U.S.C. § 1002. ERISA comprehensively regulates the participation, funding, and vesting of pension plans but not welfare benefit plans. 29 U.S.C. §§ 1051(1), 1081(a)(1). Welfare benefits are also excluded from the definition of

---

1. When enacted, the Rail Act did not authorize funding by the Association for life insurance coverage. It was not until October, 1976, that loans were permitted for this purpose. Pub.L. No. 94-555, Title II, 90 Stat. 2617, 2619, 2620, 2629.

2. The government does not contest the applicability of Pennsylvania law if state law is not pre-empted. Clearly, Pennsylvania law would apply as Reading is a Pennsylvania corporation and substantially all of its former rail operations were located within Pennsylvania.

Under Pennsylvania law, an employer's right to terminate life insurance coverage is determined according to the contractual language. *See Clayton v. Nat'l Electric Products Corp.,* 421 Pa. 375, 219 A.2d 595 (1966); *Miller v. Travelers Ins. Co.,* 143 Pa.Super. 270, 17 A.2d 907 (1941). The question of Reading's contractual right to terminate life insurance will be discussed *infra.*

"accrued benefits" which are subject to ERISA's non-forfeiture provisions. *Id.* at § 1053(a)(2); 26 C.F.R. § 1041(a)–7(a)(ii)(1981). *See, e.g., Hoover v. Cumberland Area Teamsters Pension Fund,* 756 F.2d 977 (3d Cir.1985). Nevertheless, the Supreme Court has held that ERISA's broad pre-emption clause, 29 U.S.C. § 1144(a), establishes that welfare benefit plans are a concern of federal law exclusively even though ERISA itself may not provide an answer. *See Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 98–100, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). Thus, federal common law governs the question of an employer's right to terminate a welfare benefit plan under ERISA.

The government next urges me to hold as a matter of federal common law that an employer's undertaking to provide life insurance coverage becomes irrevocable once an employee retires. The government relies upon *In re Erie Lackawanna Railway Company,* 548 F.2d 621 (6th Cir.1977), in which the Sixth Circuit held, construing federal law and Ohio law, that an employee's a life insurance rights become nonforfeitable upon his retirement even where the employer reserves the right to terminate.

Reading argues that under federal common law, an employer's right to terminate a welfare benefit plan should be determined by the terms of the plan and the intent of the parties, not by a common law rule of vesting on employee-retirement. Reading further claims that it had a contractual right to terminate the plan upon written notice in accordance with the booklet, because it was "necessary" or "advisable" to do so when rail operations ceased.

Federal common law derives from the policies underlying the federal statute pre-empting state law. *Abbate v. Browning Ferris Industries,* 767 F.2d 52 (3d Cir. 1985). State law can serve as a source of federal common law where it is consistent with the policies underlying the federal statute; however, a court "may not use state common law to re-write a federal statute." *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499 (9th Cir.1985).

It is well settled that ERISA was not intended to prohibit the modification or termination of non-accrued or "ancillary" benefits. *See Sutton v. Weirton Steel Division of Nat'l Steel Corp.,* 724 F.2d 406 (4th Cir.1983); *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357 (D.N.J.1982). Recently, the Sixth Circuit held that under the federal common law of ERISA welfare benefits do not vest upon an employee's retirement. In *In re White Farm Equipment Co.,* 788 F.2d 1186, 1192 (6th Cir.1986), an employer in bankruptcy reorganization sought to terminate a welfare benefit plan that provided retired employees with insurance coverage. The bankruptcy court permitted the employer to terminate the plan; however, the district court held that under the federal common law of ERISA, welfare benefits vest upon retirement. The Sixth Circuit reviewed state case law and the history of ERISA and concluded that absolute vesting of welfare benefits is not a rule of federal common law under ERISA. In reaching its decision, the Sixth Circuit refused to adopt as federal common law the rule it had enunciated in *In re Erie Lackawanna Railway Company,* 548 F.2d 621 (6th Cir. 1977), noting that *Erie* was decided under Ohio State law prior to the effective date of ERISA.[3] In declining to develop a federal common law rule to mirror the provisions of ERISA, the *White Farm* court emphasized the vesting and forfeiture restrictions Congress placed on pension plans while leaving those aspects of welfare benefit plans free from such restrictions. Thus, the court held that an employer can contractually provide whether a welfare benefit plan becomes irrevocable or whether it may be terminated.[4]

---

**3.** The *White Farm* court did not address the statement in *Erie* that the decision was made under both federal law and Ohio state law. In any event, *Erie* was decided prior to ERISA.

**4.** The Sixth Circuit remanded the case back to the bankruptcy court to determine the intent of the parties since it agreed with the district court that the plans in question were ambiguous. 788

The government's argument is irreparably undermined by *White Farm.* Moreover, most of the non-Ohio state law cases cited by the government in support of its position involved pension plans and were decided pre-ERISA. *But see Schlosser v. Allis-Chalmers Corp.,* 86 Wis.2d 226, 271 N.W.2d 879 (1978) (construing Wisconsin law in accord with Ohio law). Since ERISA expressly distinguishes pension plans from welfare benefit plans, these cases do not support the proposition that federal law should make welfare benefit plans irrevocable upon retirement.

In addition, the Third Circuit has concluded that employees' rights to life insurance benefits do not absolutely vest upon retirement. *Struble v. N.J. Brewery Employees' Welfare Trust Fund,* 732 F.2d 325 (3d Cir.1984). In *Struble,* the court looked to the language of a trust agreement to determine whether the employers could terminate the life insurance benefits. *Id.* at 330–31. While not expressly decided under federal common law, *Struble* is contrary to the government's position.[5]

 In accord with *White Farm* and *Struble,* I conclude welfare benefits do not automatically vest when an employee retires under the federal common law of ERISA. Congress has less stringently regulated welfare benefit plans than pension plans and there is no evidence that Congress intended the courts to establish vesting and non-forfeiture requirements for welfare benefit plans. Consequently, the parties were free to contract as to whether retiree welfare benefits may be terminated or not.

Reading's reorganization problems and the transfer of all of its rail assets were clearly future conditions justifying its decision that discontinuance of life insurance coverage was necessary or advisable. Because Reading had the right to terminate the group life insurance plan and exercised

that right, the government's payment for a life insurance annuity is not a valid administrative claim. It follows the government's motion for summary judgment will be denied and Reading's cross motion for summary judgment will be granted.

F.2d at 1193; *see also, In re White Farm Equipment Co.,* 42 B.R. 1005 at 1019–21 (N.D.Ohio 1984).

**5.** In addition, Pennsylvania and New York law do not require vesting of welfare benefits upon retirement. *See Kolentus v. Arco Corp.,* 798

F.2d 949 (7th Cir.1986) (New York law); *Boase v. Lee Rubber & Tire Corp.,* 437 F.2d 527 (3d Cir.1970) (same); *Clayton v. National Electric Products Corp.,* 421 Pa. 375, 219 A.2d 595 (1966) (Pennsylvania law).