**Gregory A. MITCHELL, Plaintiff,**

v.

**GREAT–WEST LIFE ASSURANCE COMPANY, and American Fidelity Assurance Co., Defendants.**

**No. CIV–90–196–T.**

United States District Court, W.D. Oklahoma.

Aug. 9, 1991.

Richard Morris, Robert L. Stormont, Oklahoma City, Okl., for plaintiff.

Donald J Gutteridge, Jr., Kerr Irvine Rhodes & Ables, Oklahoma City, Okl., John R. Woodard, III, Feldman Hall Franden Woodward & Farris, Tulsa, Okl., for defendants.

## ORDER DENYING DEFENDANT GREAT–WEST LIFE ASSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

RALPH G. THOMPSON, Chief Judge.

### I. INTRODUCTION

At issue is defendant Great–West Life Assurance Company's ("Great–West") motion for summary judgment. Plaintiff Gregory A. Mitchell responded in opposition. American replied. Mitchell submitted a supplemental brief.

### II. BACKGROUND FACTS

In this action, plaintiff Gregory A. Mitchell seeks to compel defendant Great–West to provide health insurance coverage for his accidental injuries that resulted in his total disability. Plaintiff's father, Royce Mitchell, worked for Tyler & Simpson Company and carried dependent health insurance on plaintiff. Tyler & Simpson terminated the group insurance with co-defendant American Fidelity Assurance Company ("American") effective December 31, 1987, and replaced it with insurance provided by Great–West Assurance Company ("Great–West") effective January 1, 1988. Due to an accident, Greg Mitchell became totally disabled just prior to the termination and consequently Great–West, the successor medical insurance provider, refused to insure plaintiff pursuant to terms in the written insurance plan.

On October 17, 1990, the Court dismissed Tyler & Simpson from this action. On July 11, 1991, the Court denied defendant Amer-

ican's motion for summary judgment, and sua sponte entered partial summary judgment for plaintiff Mitchell on the liability portion of his claim against American.

Plaintiff and Great–West agree that their dispute is covered by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. §§ 1001–1461.

## III. STANDARD FOR SUMMARY JUDGMENT

The facts presented to the court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico*, 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. Only genuine disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, the movant must show entitlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

Although the Court must view the facts and inferences to be drawn from the record in the light most favorable to the nonmoving party, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chem. Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512.

## IV. UNDISPUTED FACTS

Rule 14(B) of the Western District of Oklahoma provides a framework for determining undisputed facts at the summary judgment stage. The Rule provides:

> The brief in support of a motion for summary judgment (or partial summary judgment) shall begin with a section that contains a concise statement of material facts as to which movant contends no genuine issue exists. The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies. The brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section which contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

W.D.Okla.R. 14(B).

A review of Great–West's brief and Mitchell's response reveals that the following facts are undisputed within the mean-

ing of Rule 14(B) for the purposes of this motion only:

1. The group employee hospitalization and disability plan ("plan") offered to employees of Tyler & Simpson Company was governed by the terms of ERISA.

2. Great–West entered into a self-funded, stop loss plan with Tyler & Simpson Company.

3. The effective date of the plan issued by Great–West was January 1, 1988.

4. Plaintiff's father, Royce Mitchell, was an employee of Tyler & Simpson Company at the time of plaintiff's accident.

5. Plaintiff was covered under the plan as a dependent of Royce Mitchell.

6. Plaintiff, on or about December 20, 1987, was involved in an accident and was therefore disabled prior to the effective date of the plan issued by Great–West.

7. Plaintiff has been totally disabled since the accident.

8. The policy issued by Great–West provides that dependent coverage does not begin for a totally disabled dependent until he ceases to be totally disabled.

Great–West's brief at 1–2; Gregory A. Mitchell's response brief at 2.

## V. ANALYSIS

■ There is no serious dispute as to the foundational facts in this case. The legal dispute is whether plaintiff is ineligible for health insurance pursuant to the plain, unambiguous terms of a written plan, which provides:

START OF DEPENDENT COVERAGE

Your Dependents' coverage starts when your coverage starts unless:

*a Dependent is Totally Disabled. If a Dependent is Totally Disabled when your coverage starts, his coverage will not start until he ceases to be Totally Disabled.

Great–West's brief at Ex. 4, p. 10 (unnumbered) (emphasis in original).

■ ERISA plans must be maintained in writing, and the express terms of that writing control eligibility for benefits. *Straub v. Western Union Tel. Co.*, 851 F.2d 1262,

1265 (10th Cir.1988), *disagreed with, but also followed, by multiple cases as stated in, Black v. TIC Inv. Corp.*, 900 F.2d 112, 114–15 (7th Cir.1990); *see* 29 U.S.C. § 1102(a)(1). "A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits." *United States v. Spedalieri*, 910 F.2d 707, 709 n. 2 (10th Cir.1990).

Moreover, ERISA preempts all state law claims insofar as they relate to an employee benefit plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 47–48, 54, 107 S.Ct. 1549, 1550, 2552–53, 1556, 95 L.Ed.2d 39 (1987) (finding ERISA preemption of claims of tortious breach of contract, breach of fiduciary duties, and fraud in the inducement); 29 U.S.C. § 1144(a), (b)(2); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 60, 67, 107 S.Ct. 1542, 1544, 1548, 95 L.Ed.2d 55 (1987) (finding not only preemption of common law breach of contract and tort claims, but also exclusivity of remedies under ERISA); *Straub v. Western Union Tel. Co.*, 851 F.2d at 1263, 1265 (finding ERISA preemption of breach of contract and negligent misrepresentation claims). Also, in a pre-ERISA case the Tenth Circuit found that the unambiguous, written terms of a pension plan controlled over representations made in a letter and a booklet. *Johnson v. Central States, S.E. & S.W. Areas Pension Fund*, 513 F.2d 1173, 1175–76 (10th Cir.1975).

■ Further, courts may not resort to state common law in order to fashion federal common law when the result is inconsistent with the policies of the underlying federal statute in question. *Nachwalter v. Christie*, 805 F.2d 956, 959–60 (11th Cir. 1986), *cited with approval in, Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1265 (10th Cir.1988). Oral modification of an approved ERISA plan is not allowed. *Straub*, 851 F.2d at 1265 ("[W]e hold that no liability exists under ERISA for purported oral modifications of the terms of an employee benefit plan."); *accord Nachwalter*, 805 F.2d at 960. These conclusions of law would typically end this Court's inquiry, but this case is atypical.

Here, plaintiff alleges he was suffering from serious injuries and was provided a choice of converting his insurance coverage under American or switching over to the Great–West plan. Plaintiff was totally disabled and was covered for up to one million dollars of insurance under the American coverage. Plaintiff's father and the employer claim they were assured by a named Great–West agent that there would be no interruption of service and no one eligible for coverage would lose out if the carrier was changed to Great–West. In reliance on these and other oral representations, and on written materials that indicated nothing to the contrary, plaintiff's father switched over to the Great–West plan. Also, the union contract of plaintiff's father provided that the new insurance contract had to be at least as good as the old insurance, and this further assured plaintiff.

The new plan went into effect on January 1, 1988. However, plaintiff offers evidence that the final, written plan relied on here by Great–West was not delivered to the employer until February 1988, over a month subsequent to its effective date, and that for the first time it contained the unilaterally imposed condition quoted above regarding exclusion of the class of totally disabled dependents that applies to plaintiff.

■ The Court will only enforce the provisions of an approved ERISA plan. "A central policy goal of ERISA is to protect the interests of employees and their beneficiaries in employee benefit plans." *Straub v. Western Union Tel. Co.*, 851 F.2d at 1262 (quoting *Nachwalter v. Christie*, 805 F.2d at 960). If plaintiff's allegations prove true, then there was no assent to the exclusion provision, and it cannot be enforced as rigidly urged by Great–West. As alleged in this case, an insurance company will not be permitted to make oral and written representations that are relied on by employers and employees; make unilateral amendments to the final written plan; and then hide behind the ERISA statutes to enforce compliance with written terms that were never approved nor assented to. *See*

*Nachwalter v. Christie*, 805 F.2d at 960 ("ERISA requires that each plan shall 'provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan....") (quoting 29 U.S.C. § 1102(b)(3)). The Supreme Court has consistently noted, including in the area of ERISA, that " ' " ' " '[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ' " ' " *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 51, 107 S.Ct. at 1555 (quoting *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986) (ERISA context) (quoting *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (in turn quoting *United States v. Heirs of Boisdoré*, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849))))).

This case does not involve an oral modification of a written plan as argued by the insurance company, but rather, it involves an allegedly unauthorized and unilaterally written modification of an oral agreement. Great–West has provided no authority that directly condones or permits this result. Alternatively, since "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument[ ]," 29 U.S.C. § 1102(a)(1), then arguably the ERISA plan in this case did not go into effect, and thus ERISA preemption did not begin, until the plan was committed to a writing.

Therefore, Great–West has not shown that it is entitled to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d at 885; Fed.R.Civ.P. 56(c).

## VI. CONCLUSION

Accordingly, the Court finds that summary judgment is DENIED to defendant Great–West Life Assurance Company.

IT IS SO ORDERED.