COMPLETE HEALTH, INC., Plaintiff,

v.

David E. RASBERRY and Delores
Rasberry, Defendants.

Delores RASBERRY and David
Rasberry, Plaintiffs,

v.

COMPLETE HEALTH, INC. and
Complete Health of Alabama,
Inc., Defendants.

Nos. CV 92–B–1807–S, 92–B–2194–S.

United States District Court,
N.D. Alabama,
Southern Division.

March 21, 1994.

James S. Christie, Jr, Bradley Arant Rose & White, Philip F. Hutcheson, Porterfield Harper & Mills, PA, Birmingham, AL, for Complete Health, Inc.

William P. Traylor, III, Yearout Myers & Traylor, PC, Don L. Hall, Porterfield Harper & Mills, PA, Birmingham, AL, for David E. Rasberry and Delores Rasberry.

## MEMORANDUM OPINION

BLACKBURN, District Judge.

The matter is before the court on the Motion for Summary Judgment filed by Complete Health, Inc. and Complete Health of Alabama, Inc., on April 15, 1993. Upon consideration of the memoranda and the evidentiary material, the court is of the opinion that Complete Health, Inc. and Complete Health of Alabama, Inc. are entitled to judgment as a matter of law.

### FACTUAL SUMMARY

This dispute arises out of the denial of a request by Delores Rasberry in 1992 for a bone marrow transplant under a group health insurance plan provided by Complete Health, Inc. through David Rasberry's employer, Ebsco Industries, Inc.

In early 1992 Delores Rasberry's health care provider determined that a bone marrow transplant was necessary for her treatment. Prior to the transplant being performed, Complete Health, Inc. denied any bone marrow transplant coverage. After exhausting the appeals process, on August 10, 1992, the Rasberrys filed an action in the Circuit Court of Jefferson County, Alabama, which was subsequently removed to this court. On August 4, 1992, Complete Health, Inc. filed a declaratory judgment action to determine any medical benefits due to the Rasberrys. Because both actions derive from the same circumstances and involve common questions of law and fact, on September 17, 1992, the court consolidated these actions.

### DISCUSSION

The provisions of the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. §§ 1001 *et seq.* govern these actions. Because the group master contract between Complete Health and Ebsco does not provide a deferential standard of review for the denial of benefits, the court reviews the denial on a de novo standard. *See Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1559 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

The Rasberrys assert that Mrs. Rasberry was entitled to benefits for a bone marrow transplant. As support for this position, the Rasberrys argue that the terms of the plan are ambiguous. "As a general rule, whether or not a written contract is ambiguous is a question of law for the trial court." *Upton v. Mississippi Valley Title Ins. Co.*, 469 So.2d 548, 553 (Ala.1985). The court finds that the terms of the group insurance plan clearly and unambiguously exclude bone marrow transplants. The court recognizes Alabama's "rule that exceptions to coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured, and that clauses setting out exceptions must be construed most strongly against the company that issued the policy." *Wakefield v. State Farm Mutual Auto. Ins. Co.*, 572 So.2d 1220, 1223 (Ala.1990). However, Alabama courts further recognize that "insurance contracts, like other contracts, are construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, as it is in this case, the policy must be enforced as written." *Id.*

■ The master contract between Complete Health, Inc. and Ebsco Industries provides: "**Transplants:** covered transplants are limited to cornea, heart, renal and liver for congenital biliary atresia." (Master Contract, page A–9). The Enrollment Brochure, which contains a summary of benefits provided by Complete Health, Inc. contains a similar statement in the section entitled "TREATMENTS AND SERVICES SPECIFICALLY EXCLUDED." The first paragraph under this section states:

Covered transplants are limited to cornea, heart, renal, and liver for children with congenital biliary atresia. Authorized medical and hospital expenses of a recipient and a donor (or prospective donor) are covered only when the recipient is a Member and when the services are authorized by the Member's Personal Physician and the Medical Director. If the donor is not a Member, covered services for the donor are limited to those services and supplies directly related to the transplant procedure itself and are covered only to the extent that those services are not covered by other health insurance. If the recipient is not a Member, no donor expenses are covered. Donor transportation costs are not covered even when the donor is a Member.[1]

(Enrollment Brochure, page 17). The first sentence clearly and unambiguously states what transplants will be authorized and excludes all others, including bone marrow transplants. The Rasberrys argue that this language is ambiguous because it does not specifically list each transplant which is excluded. The court finds no merit to that argument. In addition, the court finds it unreasonable to interpret the first sentence as limiting services "only in terms of those transplants related to treatment to children." (*See* Rasberrys' Brief, page 4). The clear reading is that all transplants are excluded except "cornea, heart, renal, and liver for children with congenital biliary atresia."

The Rasberrys further argue that the second sentence "seems to suggest that the medical and hospital expenses are covered 'when the recipient is a member,' and the coverage is authorized by the physician." (*See* Rasberrys' Brief, page 4). However, it is clear that the second sentence is to be read in connection with the previous sentence which states which transplants will be covered. It is clear that those expenses will be authorized only when they are in connection with a transplant that is covered.

In addition, the Rasberrys argue that there is latent ambiguity in that Complete

1. Mr. Rasberry asserts that he never received a copy of the exclusions page. However, the enrollment brochure was provided to Ebsco Industries for distribution to its employees. (Affidavit of Susan Patterson, Director of Grievances/Ombudsman for Complete Health Services, Inc.).

Health, Inc. has inconsistently construed this provision by covering a bone marrow transplant under a similar plan for another plan member. However, Complete Health, Inc. has provided evidence that the transplant was covered for reasons other than a different construction of the contract. (*See* Pritchett Deposition, pages 38–41).[2] In her deposition, Susan Patterson testified that this contract was similar to the contract under which the Rasberrys are covered, and that the bone marrow transplant "was a noncovered benefit under the group master contract." (Patterson Deposition, pages 27–31). In addition, Complete Health submitted evidence that a potential group member called on November 27, 1991, inquiring whether a bone marrow transplant would be covered, and was told it is not covered. (Patterson Deposition, page 87). These are consistent with the construction of the provision in the instant action; thus, the court finds no evidence of latent ambiguity.

The Rasberrys also assert the provision is ambiguous because "David Rasberry was informed that the bone marrow transplant and treatment for leukemia would be covered by Complete Health, Inc." (Rasberrys' Brief, pages 5–6). However, the Rasberrys have provided no evidence that Complete Health, Inc. ever represented to Mr. Rasberry that bone marrow transplants are covered. In his deposition, Mr. Rasberry testified:

Q. This is very important, Mr. Rasberry, so I want you to tell me the best you can remember exactly what you said to the person you talked to on the phone at Complete Health and exactly what they said to you.

A. This is a recollection.

Q. I understand.

A. I got a customer service rep and told her my name and told her that I was covered by Blue Cross/Blue Shield PMD, my wife was covered by another Blue Cross policy but the PMD declined to cover my wife because of the preexisting leukemia, and I said, I am calling because I am interested in Complete Health but I don't want to get insurance that is not going to cover her and she said something like, "We don't worry about or we don't deal with preexisting conditions". And I said, "Do you mean that you won't cover preexisting conditions"? And she said "No, we will cover. We don't concern ourselves with preexisting conditions". And I said, "She is in remission. She has leukemia but she is in remission but what this means is office visits every six weeks, extra susceptibility to illnesses, extra vitamins, extra medicines, I want to make sure that the standard treatments for her leukemia will be covered if I go with Complete Health". And she said "Yes, they would be covered".

(David Rasberry Deposition, pages 32–33). Assuming arguendo that this conversation did, in fact, take place,[3] the representative at Complete Health, Inc. did not tell Mr. Rasberry that bone marrow transplants are covered. In fact, when asked specifically, Mr. Rasberry admits he was never told bone marrow transplants are covered:

Q. Did the representative of Complete Health ever say to you, yes, bone marrow transplants are covered?

A. No.

(David Rasberry Deposition, page 36). The Rasberrys have failed to produce evidence that a representative of Complete Health, Inc. told them that bone marrow transplants are covered or that the provision in question is ambiguous.

---

**2.** Ms. Pritchett explained in her deposition that the bone marrow transplant was mistakenly approved. She testified that when the referral form came through, the physician had not listed bone marrow transplant. Instead, he had requested a number of items to be covered during an inpatient hospitalization, and several lines into that request had put bone marrow infusion. The medical director approved the referral, not noticing that it was a request for a bone marrow transplant. Because the patient had already been admitted when the error was discovered, the bone marrow transplant was covered.

**3.** The only evidence of this telephone call is Mr. Rasberry's testimony. Complete Health produced evidence that they document the telephone calls they receive, and that they have no record of receiving a call from Mr. Rasberry during the time period he allegedly made the call. (Patterson Deposition, pages 48–50).

**1132**

█ Even if an agent of Complete Health, Inc. had represented to Mr. Rasberry that bone marrow transplants are covered, Complete Health, Inc. correctly argues that because ERISA requires that employee benefit plans be " 'established and maintained pursuant to a written instrument,' " oral modifications of employee benefit plans are precluded. *Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986) (quoting 29 U.S.C. § 1102(a)(1)). The Rasberrys argue that an agent of Complete Health, Inc. was interpreting an ambiguous term of the plan, and therefore, this case is controlled by *Kane v. Aetna Life Ins.,* 893 F.2d 1283 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990). In *Kane,* the Eleventh Circuit held that the federal common law of estoppel can be applied where an agent makes a representation which is an *interpretation* (as opposed to modification) of an ambiguous provision of the plan. *Kane,* 893 F.2d at 1285–86. This action does not meet either of the requirements of *Kane.* As discussed *supra,* the provisions at issue are not ambiguous such that reasonable persons could disagree as to their meaning or effect. *See Alday v. Container Corp. of America,* 906 F.2d 660, 666 (11th Cir.1990), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991). In addition, the alleged communication does not constitute an interpretation. *See id.* Therefore, *Nachwalter* controls and precludes a plan challenge premised on estoppel. *See id.*

### CONCLUSION

For the foregoing reasons, the court is of the opinion that Complete Health, Inc. and Complete Health of Alabama, Inc. are entitled to a judgment as a matter of law. An order granting their motion for summary judgment will be entered contemporaneously with this opinion.