AIR LINE PILOTS ASSOCIATION, IN-TERNATIONAL, Roger Hall, James Engelman, Thomas Sashko, J.V. Healy and B.K. Watkins, Plaintiffs,

v.

UNITED AIR LINES, INC., J.M. Batten, J.L. Cowan, D.O. Danis and Pension Benefit Guaranty Corporation, Defendants.

ASSOCIATION OF FLIGHT ATTENDANTS, Patricia Friend, Carole Holmes, Lucille Solana, Mary K. Flynn Eldridge and Ellen Thacher, Plaintiffs,

v.

UNITED AIR LINES, INC., J.M. Batten, J.L. Cowan, D.O. Danis and Pension Benefit Guaranty Corporation, Defendants.

Nos. 85 C 6669, 85 C 7739.

United States District Court, N.D. Illinois, E.D.

April 6, 1987.

Michael B. Erp, Irving M. Friedman, Harold A. Katz, Katz Friedman Schur & Eagle, Elizabeth H. Cameron, Haley Bader & Potts, Alan Sewer, Bell Boyd & Loyd, Chicago, Ill., for plaintiffs.

Stephen P. Sawyer, United Air Lines, Inc., Larry Landgraf/Elizabeth Landes, Asst. U.S. Attys., Steven H. Hoeft, McDermott Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On July 26, 1985, the Air Line Pilots Association, International ("ALPA") and five of its members filed this action against defendants United Air Lines, Inc. ("United") and J.M. Batten, J.L. Cowan and D.O. Danis, the named fiduciaries of the relevant retirement income plans, claiming violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 & Supp. III 1985).[1] On September 5, 1985, the Association of Flight Attendants ("AFA"), and five of its members, filed a separate action against United and the other defendants alleging similar ERISA violations. These two cases are being resolved together, as this Court has determined them to be related under the Local Rules of the Northern District of Illinois. *See* Local Rule 2.31. Presently before the Court is United's motion to dismiss the complaints without prejudice and the individual plaintiffs' motion for attorneys' fees under 29 U.S.C. § 1132(g)(1)

---

1. Other claims not relevant here were also made under the Railway Labor Act, 45 U.S.C. §§ 151–158, and the Administrative Procedure Act, 5 U.S.C. §§ 551–559. The Pension Benefit Guaranty Corporation ("PBGC") was also named as a defendant in these actions, but its presence is irrelevant to the present motions.

(1982). For the following reasons, the Court grants United's motion to dismiss but denies the individual plaintiffs' motion for attorneys' fees.[2]

## I. UNITED'S MOTION TO DISMISS

These suits were filed by the plaintiffs based on their allegations that United's Board of Directors adopted a resolution on June 7, 1985, to recover "excess assets" from several employee retirement benefit plans through a process labeled as a "spin-off/termination." The "excess" funds allegedly exist because of actuarial underestimates regarding the return on United's plan contributions in past years. High interest rates apparently yielded an unexpectedly large return on the pension fund assets and created this "excess," which essentially means that the current plan assets exceed the net present value of accrued benefits. On June 12, 1985, in order to execute the spin-off/termination, United, without notifying ALPA or AFA, allegedly promulgated amendments to the employee retirement benefit plans (the ALPA "A" Plan and the AFA "Retirement Plan") to be effective as of July 1 of that year.

The spin-off/termination plans were allegedly designed so that United would create a separate plan ("the spin-off plan") to which it would transfer all participants in the original plans (the A Plan and the Retirement Plan) who retired or terminated their employment prior to July 1, 1985. This left only current employees in what was characterized as the "continuing" plans. All assets necessary to fund already accrued benefits for current employees would remain with these continuing plans,[3] while United proposed to take the rest of the assets and create the temporary spin-off plans. Then, on July 10, 1985, the spin-off plans would terminate, and with these assets United would purchase annuities purportedly sufficient to provide all accrued benefits for those employees retired or terminated as of July 1, 1985, and recover for its own use all residual assets not used to purchase the annuities. United characterizes this as the "termination" of an existing plan within the meaning of ERISA, see 29 U.S.C. §§ 1342, 1344, and a corresponding "spin-off" creation of a new plan. The plaintiffs allege that the amount of so-called excess assets resulting from the spin-off/termination plans would exceed $511 million with respect to ALPA's plan and $73 million with respect to AFA's plan.

ALPA and AFA ("the Unions") and the individual plaintiffs filed these related suits for declaratory and injunctive relief barring United from carrying out the spin-off/termination plan, claiming that any such appropriation of plan assets for an employers' use is in violation of numerous provisions of ERISA regarding fiduciary duties as well as the specific terms of the original plans which prohibit reversion of plan assets to the company.[4]

2. On April 10, 1986, a motion to intervene in the ALPA case under Fed.R.Civ.P. 24 was filed by 149 current and former United pilots and flight engineers who are plaintiffs in two consolidated cases before Judge James B. Parsons, Addison v. United Air Lines, Inc., No. 85 C 6177 (N.D.Ill.), and Gertz v. Pension Benefit Guaranty Corporation, No. 86 C 2830 (N.D.Ill.). The proposed intervenors' original concern was that the proposed settlement between United and the Unions might adversely affect their position in the cases before Judge Parsons which also involve spin-off/termination plans. In a supplemental motion recently filed with the Court, the proposed intervenors argue that a dismissal of the ALPA litigation may have the same adverse effect as the now-withdrawn settlement proposal. We disagree. Because our order dismissing the ALPA and AFA cases today is without prejudice, it should have no bearing on the proposed inter-

venors' cases, as we make no conclusions on the underlying merits. Thus, our order of dismissal is essentially maintaining the status quo as it existed at the time these suits were originally filed. Accordingly, the motion to intervene is denied.

3. Presumably, United would then continue contributing to the continuing plans as future benefits accrued.

4. Among other things, the plaintiffs contend that the spin-off/termination plan violates ERISA provisions requiring that: (1) the assets of the plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan, 29 U.S.C. § 1103(c)(1); (2) a fiduciary shall discharge his

On November 26, 1985, the date set for a preliminary injunction hearing, this Court strongly encouraged the parties to seek some mutually agreeable resolution of their conflict without fighting the legal battle to the end. The parties then sat down at the bargaining table and began negotiating a settlement under the oversight of this Court. Following repeated meetings and efforts by the parties and the Court, a preliminary settlement was reached in March of 1986. United soon backed off, however, apparently because it determined that the entire spin-off/termination plan was no longer economically desirable due to substantial changes in the condition of financial markets. A sharp drop in interest rates apparently increased substantially the cost of the annuities which United would have had to purchase for its retired employees with the funds from the spin-off plan, thus shrinking the amount of "excess" funds available to United. Accordingly, it was no longer inclined to settle the case and instead filed the present motion to dismiss the cases without prejudice based on its representation that it no longer desired to undertake the challenged transaction.

This part of the present motion is quite simple. Both parties agree that United has dropped its spin-off/termination plan for the present, thus rendering unnecessary any further litigation. The plaintiffs agree that, so long as United's representations are true, the suit is now moot. Accordingly, we allow United's motion to dismiss

these actions without prejudice under Fed. R.Civ.P. 12(b)(1).[5] Should United once again find the economic climate suitable for the pursuit of the so-called "excess" assets in the pension funds through another spin-off/termination plan, the Unions would have leave to reinstate this suit.

## II. INDIVIDUAL PLAINTIFFS' ATTORNEYS' FEES MOTION

The Court is now left with a motion by the individual plaintiffs for attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1) (1982). Section 1132(g)(1) provides that "[i]n any action under this subchapter [with exceptions not pertinent here] ... by a participant, beneficiary, or fiduciary the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *Id.* The subchapter referred to in this provision is Subchapter I of ERISA, which is entitled "Protection of Employee Benefit Rights." 29 U.S.C. §§ 1001–1145. Section 1132(g)(1) provides an extraordinary amount of discretion to the district court in evaluating the legitimacy of fee requests and differs greatly from other federal statutory attorneys' fees provisions. For example, there is no express "prevailing party" requirement.[6] *Cf.* Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982); Equal Access To Justice Act, 28 U.S.C. § 2412 (1982 & Supp. III 1985).

United first argues that the Court has no jurisdiction to even consider the attorneys'

---

duties for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, 29 U.S.C. § 1104(a)(1)(A); (3) a fiduciary discharge his duties in accordance with the *documents and instruments governing the plan*, 29 U.S.C. § 1104(a)(1)(D); and (4) a fiduciary shall not cause the plan to engage in a transaction which constitutes a transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan, 29 U.S.C. § 1106(a)(1)(D). Furthermore, the plaintiffs maintain that even if United's plan did qualify as a termination under ERISA, the distribution of assets to the company violated *29 U.S.C. §§ 1344(d)(1)(A) and (C)* because all liabilities of the plan to participants and their beneficiaries would not have been satisfied and the plan does not provide for residual asset distribution.

5. Dismissals for mootness are best treated as dismissals for lack of subject matter jurisdiction, since there is no remaining case or controversy within the meaning of Article III of the Constitution when a matter has been resolved.

6. We observe that if such a requirement existed, it is not clear that the individual plaintiffs could be properly labeled as "prevailing parties" given the fact that United's decision to abandon its spin-off/termination plan was primarily, if not wholly, a product of the changed financial markets. We also note, however, that the Seventh Circuit recently, and without explanation, considered the prevailing party standard in the context of an ERISA attorneys' fees motion. Janowski v. International Brotherhood of Teamsters Local No. 710 Pension Fund, No. 85–1287, slip op. (7th Cir. Feb. 9, 1987).

fees motion because § 1132(g)(1) is limited to cases brought under Subchapter I of ERISA which governs exclusively the duties of fiduciaries. As stated above, however, the Unions' complaints allege violations of several ERISA provisions, including those regarding the responsibility of fiduciaries to discharge their duties for the exclusive purpose of providing benefits to the participants and beneficiaries. *See* 29 U.S.C. § 1104(a)(1)(A). Thus, it appears that jurisdiction would not be a problem. However, because as set forth in greater detail below we find that the Unions would not be entitled to fees under § 1132(g)(1) in any event, we assume without deciding that we have jurisdiction to hear the attorneys' fees issue.

Unfortunately, the flipside of the broad discretion provided under § 1132(g)(1) is a corresponding lack of statutory guidance for the district courts in assessing ERISA attorneys' fees motions. The Seventh Circuit has instructed district courts to evaluate the following five factors in conjunction with a § 1132(g)(1) motion: (1) the degree of each party's culpability or bad faith; (2) the relative merits of the parties' positions; (3) whether an award of fees against the opposing party would deter others from acting under the same circumstances; (4) whether the party seeking fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the ability of the opposing parties to satisfy an award of fees. *Chicago Painters and Decorators Pension, Health and Welfare and Deferred Savings Plan Trust Funds v. Karr Brothers, Inc.,* 755 F.2d 1285, 1291–92 (7th Cir.1985). As discussed below, we are somewhat hindered by the inchoate nature of the plaintiffs' suits. Nevertheless, considering the posture of the parties in the present case against these five factors, we conclude that the individual plaintiffs are not entitled to a fee award under § 1132(g)(1).

First, this Court has closely observed the settlement negotiations throughout their course and has observed absolutely no indication, explicit or implicit, that United has acted in bad faith in this litigation. Ac-

cordingly, we find that the first consideration weighs in favor of United.

As for the relative merits of the parties' positions, the Court observes that the issues in this litigation present an extremely close case. Both sides have acknowledged that these cases present "novel and complex legal issues" regarding the authority of an employer to recapture "excess" funds from an ERISA plan which exist due to unexpectedly high investment returns. The law in this area is not well-developed and there have been both adverse and favorable rulings by other district courts at the preliminary stages of similar cases. *See, e.g., Van Orman v. American Insurance Co.,* 608 F.Supp. 13 (D.N.J.1984) (termination and spin-off plan is a business decision not limited by fiduciary obligations); *Brunt v. The Charter Co.,* 3 Employee Benefits Cas. (BNA) 1201 (E.D.Pa. Jan. 22, 1982) (action by plan beneficiaries against employer alleging breach of fiduciary duties for termination and spin-off plan states a claim under ERISA). It would be difficult for this Court to justify a substantial fee award for expenses incurred in litigating such a novel legal claim, especially given the fact that the case was not even concluded by a final decision on the merits. Accordingly, this factor justifies a denial of the individual plaintiffs' motion.

The third factor which the Seventh Circuit invites us to look at is the deterrent effect the moving party's litigation may have on future parties in the position of the party opposing the fees motion. Again, because the case has not been concluded on the merits, it is difficult to project how this resolution would bear on the incentive of other employers to pursue similar spin-off/termination plans. Any effect on future litigants is likely to be negligible.

The fourth factor favors the Unions because it permits the Court to evaluate the extent to which the moving party's suit *sought* to benefit all participants and beneficiaries of an ERISA plan or to resolve significant legal questions. Clearly, the Unions were seeking to benefit all present and former United pilots and flight attendants who potentially would have been af-

fected by the spin-off/termination and to resolve what has already been characterized as a novel legal issue. Nonetheless, the presence of this factor alone is not sufficient to justify a fee award, especially where the claim was not resolved on the merits. Any benefit to the plan participants and their beneficiaries has resulted in substantial part from the changed financial markets.

The final factor, the ability of the opposing parties to satisfy the fee award, favors the Unions, but again is not a sufficient basis for a substantial fee award. We would not quibble with the proposition that United is well-equipped to absorb the requested fees.[7] Nevertheless, each side has expended a significant amount of resources in the course of these suits and, given the resolution which has been reached, the Court finds that the "American rule" should apply here so that each party bears its own attorneys' costs. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

## CONCLUSION

Under the discretionary authority provided by 29 U.S.C. § 1132(g)(1) and for the reasons stated in this opinion, the individual plaintiffs' motion for attorneys' fees is denied. Furthermore, United's motion to dismiss the actions of both ALPA and AFA and the individual plaintiffs is hereby granted pursuant to Fed.R.Civ.P. 12(b)(1), but those dismissals shall be without prejudice. It is so ordered.

---

**7.** United argued in its brief opposing the fees motion that the Court should consider the fact that the individual plaintiffs' expenses have admittedly been borne by the Unions in this case. The individual plaintiffs argue that this should not be a factor in our ruling on the attorneys' fees motion, noting that United cites no case where the *moving party's* ability to pay attorneys' fees was considered. We emphasize that we have ignored the fact that the Unions paid the individual plaintiffs' litigation expenses in these cases and that our decision to deny the fees motion is predicated primarily on the unresolved status of the underlying substantive dispute.