Wendy W. KROGH, Plaintiff,

v.

Hans Q. CHAMBERLAIN, Commissioner Utah State Bar; Utah State Bar; Randy Dryer, Commissioner Utah State Bar; James Z. Davis, Commissioner Utah State Bar; The Hon. Pamela Greenwood, Commissioner Utah State Bar; Stewart M. Hanson, Jr., Commissioner Utah State Bar; Donald B. Holbrook, Commissioner Utah State Bar; Jackson Howard, Commissioner Utah State Bar; Kent M. Kasting, Commissioner Utah State Bar; Gordon J. Low, Commissioner Utah State Bar; Reed Martineau, Commissioner and President Utah State Bar; Anne Stirba, Commissioner Utah State Bar; Stephen Hutchinson, Executive Director, Utah State Bar; Jo–Carol Nesset–Sale, Bar Counsel, Utah State Bar; and Barbara Bassett, Associate Director, Utah State Bar, Defendants.

Civ. No. C–88–0052 W.

United States District Court,
D. Utah, C.D.

March 10, 1989.

**1236**

Brian M. Barnard, Utah Legal Clinic, Salt Lake City, Utah, for plaintiff.

Carman E. Kipp, Robert Rees, Christine A. Burdick, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on plaintiff's motion for attorney's fees. A hearing was held on this motion on February 22, 1989. Defendants were represented by Carman E. Kipp and Robert E. Rees. Plaintiff, Wendy W. Krogh, was represented by Brian M. Barnard. Prior to the hearing, the court had reviewed carefully the memoranda submitted by the parties. After taking the matter under advisement, the court has further considered the law and the facts and now renders the following memorandum decision and order.

### Background

The Utah State Bar ("Bar") employed plaintiff, Wendy Krogh, from approximately December 9, 1985 until she was fired on November 16, 1987. As an employee, plaintiff was covered under the Bar employees' group health insurance plan. This plan provided coverage through Blue Cross/Blue Shield of Utah.

Subsequent to her release, plaintiff commenced a wrongful termination lawsuit against the Bar and certain individuals.[1] On January 25, 1988, plaintiff also filed a suit in the federal district court of Utah alleging the Bar cancelled her insurance coverage in direct retaliation to the wrongful termination lawsuit. Plaintiff alleged the Bar had a duty pursuant to 29 U.S.C. §§ 1161 *et seq.* (Supp.1987) ("ERISA") to continue her health-care insurance coverage after her termination. Alternatively, plaintiff urged that the Bar, as an agency or instrumentality of the State of Utah had a duty pursuant to 42 U.S.C. §§ 300bb–1 *et seq.* (1987) to continue this coverage.[2] Fi-

---

1. This lawsuit, *Krogh v. Utah State Bar, et al.,* Civil No. C–87–0991 J is pending in federal district court.

2. In 1986, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), Pub.L. 99–272, amended 29 U.S.C. §§ 1161, *et seq.* and 42 U.S.

C. 300bb–1 *et seq.* COBRA requires that certain employers, under some circumstances, continue health insurance coverage for a limited period for terminated employees.

nally, plaintiff alleged the Bar promised through oral agreement to continue Ms. Krogh's insurance coverage beyond her termination date.

On December 29, 1988, defendants filed a motion for summary judgment. Defendants deny a duty existed to continue plaintiff's insurance coverage but insist the Bar never cancelled plaintiff's health care insurance anyway.[3] During the pendency of this lawsuit, the parties stipulated to continued coverage for Ms. Krogh. Eventually, Ms. Krogh cancelled the insurance. Thereafter, on January 4, 1989, plaintiff filed a motion to dismiss plaintiff's substantive claims for mootness and a motion for determination of prevailing party status seeking attorney's fees and costs. Plaintiff argues that but for the filing of the lawsuit seeking continued insurance coverage, defendants would have terminated Ms. Krogh's health-care insurance coverage.

The parties narrow consideration of attorney's fees to 29 U.S.C. § 1132(g) of ERISA which grants the district courts discretion to award attorney's fees under ERISA actions.[4] Defendants argue that because the COBRA provision of ERISA did not apply to them when Ms. Krogh was fired, the court has no discretion to award attorney's fees. The parties recognize, however, that if ERISA applies then the court should weigh the factors set forth in *Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978), to decide whether attorney's fees are appropriate.

Therefore, the questions before this court are (1) whether ERISA applies to this case allowing the court discretion to award attorney's fees and (2) if ERISA does ap-

ply, whether the *Eaves* factors weigh for or against an attorney's fee award.

### Discussion

I. *Application of COBRA requirements under ERISA to the Bar*

29 U.S.C. § 1161(b) exempts certain plans from the requirement to provide continued health-care insurance coverage to terminated employees. It states in pertinent part:

> Subsection (a) of this section shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year.

The parties interpret this statute differently. Defendants maintain it means that if an employer maintains fewer than 20 employees on a typical business day, it is exempt. Plaintiff believes it means if any employer within a group health plan employs more than 20 employees and on a typical business day, *all employers* within that plan are not exempt and must furnish continued health coverage for terminated employees. Plaintiff argues that the Bar is an employer within a multi-employer group health plan. Consequently, because some of the other employers employ more than 20 employees, all employers in the plan including the Bar are subject to COBRA.

Plaintiff cites two sources to support her position. The first is the deposition of Richard D. West, senior director of association sales at Blue Cross/Blue Shield. The second is the June 15, 1987 Income Tax Regulations proposed amendments from

---

3. Defendants argue:

   Although the Bar vigorously disputes that it is subject to the requirements set forth in COBRA, its actions with respect to the plaintiff would not constitute a violation of COBRA even if it did fall subject to the laws.... [T]he Bar has provided plaintiff with all she is entitled to receive under COBRA. The Bar has never cancelled plaintiff's health-care coverage nor have there been gaps in the coverage since plaintiff's employment was terminated....

   Defendant Memorandum in Support at 6.

4. Plaintiff's complaint alleged causes of action under 29 U.S.C. §§ 1161 *et seq.*, 42 U.S.C. §§ 300bb–1 *et seq.*, and a common law contract theory. Defendants note "absent specific authorization from Congress, litigants in federal court are not ordinarily entitled to attorney fees." Defendant Reply Memorandum at 3 (*citing Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Because Title 42 does not contain an attorney's fees provision, to grant fees, the court must find authority under the COBRA provision in Title 29.

the Department of the Treasury ("Proposed Amendments").[5]

Plaintiff claims Mr. West said the Blue Cross/Blue Shield "interpretation of COBRA is that within an association, such as the Utah State Bar, if there is one employer, with more than twenty (20+) employees, maintaining the plan then all of the employers in that association, regardless of their size, are required to offer COBRA benefits." Plaintiff's Reply Memo at 3 (citing Richard West Deposition at 37–38). Reading further in Mr. West's deposition, however, reveals that when asked specifically about the Utah State Bar endorsed plan from Blue Cross/Blue Shield Mr. West was unsure if the small employer group plan exemption applied to the Bar.[6]

The Proposed Amendments, plaintiff's second source, state: "A 'small-employer plan' is *a group health plan* maintained by one or more employers where each of the employers maintaining the plan for a calendar year normally employed fewer than 20 employees during the preceding calendar year." Proposed Amendments at 22748 (emphasis added).

Assuming the court follows the proposed amendments,[7] the important question is how many employers are in the plan to which the Bar subscribes. Looking further at the Proposed Amendments, it appears the analysis of whether a group health plan such as the one the Bar subscribed to is a collection of several health plans or one health plan is, as Mr. West indicated, not that simple to determine. Arrangements which are considered single group health plans may in fact be two or more separate group health plans.[8] For example, separate contracts are considered separate group health plans.[9] Also, "[a]n arrange-

---

5. 52 Fed.Reg. 22716 (1987) (to be codified at 26 CFR pt. 1) (proposed June 15, 1987). The proposed Income Tax Regulation amendments were meant to reflect changes resulting from COBRA and the Tax Reform Act of 1986 and to "clarify which plans must offer COBRA continuation coverage and the tax consequences of failing to do so." *Id.* at 22716–719.

6. Mr. West stated:
   As we've gotten into it there are issues that have popped up that complicate just the simple overview that if there's a group larger than 20, I guess the issues or benefits, are they similar, the plan is administered similarly, I don't know what all the questions are but it doesn't end up to be quite that simple and cut and dried.
   Richard West Deposition at 38.

7. The purpose of COBRA is to ensure that spouses or dependents of employees are not "deprived of health benefits due to an unexpected change in family status." Senate Comm. on the Budget, Consolidated Omnibus Budget Reconciliation Act of 1986, Sen.Rep. No. 146, 99th Cong., 2nd Sess. 363, *reprinted in* 1986 U.S.Code Cong. & Admin.News 42, 322. The incentive for complying with COBRA, however, is a tax deduction. In other words, unless an employer is exempt it must provide continued health-care insurance or it will lose a tax deduction. Sen.Rep. No. 99–146 at 363–64. Although the Internal Revenue Service considers the Proposed Amendments a valid interpretation of the COBRA statute, it is not clear this interpretation binds the Department of Labor who regulates ERISA programs. It is likely, however, that because of the tax deduction, the Department of the Treasury Internal Revenue Service is the agency most interested in the meaning of the small employer exemption.

   Furthermore, under ERISA, 29 U.S.C. § 1167 states: "The term 'group health plan' means an employee welfare benefit plan providing medical care (*as defined in section 213(d) of Title 26* [of the Internal Revenue Code] )...." (emphasis added).

   Finally, the Proposed Amendments state: "The regulations ... provide plan sponsors with guidance necessary to comply with the [tax] law." Proposed Amendments at 22717.

   Logically then, it seems that even though not final, employers are well advised to follow the Proposed Amendments to comply with the Internal Revenue Code. Moreover, looking at the ERISA group health plan definition, it appears Congress may have intended that the Department of the Treasury promulgate rules to interpret the COBRA small employer exemption.

8. The Proposed Amendments state:
   The rules below in paragraphs (b) through (g) of this Q & A–10 determine when an arrangement is considered to be two or more separate group health plans. If more than one of those paragraphs applies to a particular arrangement, the paragraphs are applied in succession to break the arrangement into the smallest possible group health plans.
   Proposed Amendments at 22750.

9. The Proposed Amendments state:
   In the case of an insured arrangement, if two or more groups of employees are covered under separate contracts between a participating employer or employers and an insurer or insurers, each separate contract is considered

ment that constitutes a multiple employer welfare arrangement [MEWA] as defined in section 3(40) of [ERISA], is considered a separate group health plan with respect to each employer maintaining the arrangement." Proposed Amendments at 22754. Under ERISA a MEWA is an employer maintained health-care insurance plan for the employees of two or more employers. It does not include a collectively bargained plan or one maintained by a rural electric cooperative. 29 U.S.C. § 1002(1), (40)(A). Therefore, under the Proposed Amendments each employer in a MEWA, with two exceptions, maintains a separate health-care plan. The Bar's plan could easily fit into this category or be viewed as a separate contract with Blue Cross/Blue Shield.

■ In sum, under the Treasury Department's interpretation of COBRA, the plaintiff is technically correct that the small employer exemption applies to all employers within one plan. It appears, however, the Bar maintains a separate plan from any other employer. Therefore, regardless of the employment figures of other employers who subscribe to similar group health plans, if the Bar employed fewer than 20 employees on a typical business day the year prior to Ms. Krogh's termination, it would have been exempt from providing continued health-care insurance coverage to her.

■ Finally, plaintiff argues that because defendants stipulated to continued coverage, COBRA must apply to the Bar because to continue her coverage if not legally required to do so would be fraudulent. Because it is not clear whether COBRA applied to the Bar, however, the court believes the Bar's stipulation to continued coverage during the dispute was reasonable.[10]

In any event, whether or not the COBRA requirement applied to the Bar with respect to Ms. Krogh, the ERISA attorney's fees provision does not depend upon prevailing party status. The relative merits of each parties' positions are included in the *Eaves* attorney's fees analysis.

## II. *Award of attorney's fee under ERISA*

29 U.S.C. § 1132(g)(1) provides that in any action under ERISA, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Recently, the Court of Appeals for the Tenth Circuit in *Gordon v. United States Steel Corp.*, 724 F.2d 106, 109 (10th Cir.1983), held "when determining whether to award attorney's fees under § 1132(g)(1), the district court should consider [the factors contained in *Eaves*] among others." Slightly rewording the "*Eaves* criteria," the court in *Gordon* specified the following non-exclusive criteria:

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to personally satisfy an award of attorney's fees;

(3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances;

(4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and

(5) the relative merits of the parties' position.

a. *An opposing parties bad faith and the relative merits of each parties' position.* Bringing an unmeritorious claim

---

a separate group health plan, *even if the coverage under the separate contracts is identical.* Proposed Amendments at 22754 (emphasis added). Also, each employer's portion of self-funded arrangements are considered separate plans. *Id.* at 22754–755.

**10.** During the pendency of this case, the parties stipulated three times to temporarily continue health insurance coverage for the plaintiff. The

third stipulation dated March 29, 1988, extended this coverage for an indefinite period except that the Bar could cancel its agreement with thirty days notice. Under all the stipulations the Bar maintained its position that it had no statutory obligation "to continue [providing] health care insurance coverage to the plaintiff after her termination."

may indicate bad faith. Therefore, courts often combine these two criteria in an attorney's fees analysis. To infer bad faith, the courts require more than a showing that the opposing party's position is incorrect and usually require that it is totally without merit.[11] One court stated that even "[u]nreasonableness in a party's litigation position does not require a fee award." *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251, 259 (1st Cir.1986).

The novelty and complexity of a case's legal issues may also determine the relative merit of each parties' position. Generally courts find it is reasonable for parties to advocate opposite positions on novel and complex legal issues especially on matters of first impression or at least when the law is not well-developed.[12]

Finally, with respect to voluntary settlement, one court stated: "When the plaintiff receives what he or she sued for by way of voluntary settlement, 'the fee award should not be reduced'" just because the party did not prevail in a lawsuit. *Kaholokula v. Hula Records, Inc.*, 746 F.2d 587, 590–91 (9th Cir.1985) (*quoting in part Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). But when a case concerning novel legal claims is settled, another court stated: "We emphasize ... our decision to deny the fees motion is predicated primarily on the unresolved status of the underlying substantive dispute." *Air Line Pilots*, 663 F.Supp. at 285 n. 7.

The court agrees with the defendant that "[t]he provisions of COBRA are relatively new and contain ambiguous and complex language, the application of which is uncertain." It appears from the record that Blue Cross/Blue Shield did not know if the small employer exemption applied to the Bar. In addition, if the Proposed Amendments are applied, these suggest the Bar's plan might be a single plan. Consequently, looking at its number of employees, in any given year, it might be exempt from COBRA. Therefore, the Bar's position is not without merit. It acted reasonably in asserting it may be exempted from COBRA as a small-group employer. Given the uncertainty of the Bar's status under COBRA, it appears the Bar negotiated in good faith with the plaintiff to stipulate to continued coverage until the matter was resolved.

b. *The ability of the opposing party to pay attorney's fees.* The Bar argues "there is no evidence before the court as to the defendants' ability to satisfy an award of fees." Plaintiff, on the other hand, asks the court to take judicial notice of the Bar's annual budget and the salaries of several public officials which she claims are sufficient to pay the approximately $3,500.00 in fees sought. Evidence on this point, however, is not necessary at this point because this factor alone will not form a basis for

---

11. The Court of Appeals for the Ninth Circuit in *Hope v. International Bhd. of Elec'l Workers*, 785 F.2d 826, 831 (9th Cir.1986), stated: "Even though it appears that the plaintiffs' position was incorrect, this does not necessarily mean [this] position was 'unmeritorious' or that suit was brought in bad faith." Likewise, in *Gray*, 792 F.2d at 260, the Court of Appeals for the First Circuit found no bad faith when the party seeking fees did not show that the opposing party "persisted in advocating a 'patently' meritless position." *See also Sage v. Automation, Incorporated Pension Plan and Trust*, 845 F.2d 885, 895–96 (10th Cir.1988) ("position was in good faith and not without merit"); *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir.1985) (the court found it sufficient that defendant's claim was not totally without merit).

12. *In Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987), the Sixth Circuit Court of Appeals found the district court abused its discretion awarding attorney's fees to defendants because the "case involve[d] an important, complex question of first impression. The issues involved are of recent origin, certainly are not free of doubt and are quite complex.'" *Id.* at 557 (*quoting in part United Assoc. of Journeymen v. Myers*, 488 F.Supp. 704, 716 (M.D.La. 1980)). The court concluded "[a]lthough all of the relevant facts dictate this conclusion, we are particularly influenced by the fact that the present case involves complex issues of first impression." *Id.* at 558. *See also, Misic v. Building Serv. Employees Health and Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir.1986) (the court "decline[s] to award fees because the questions ... are novel, and each side acted in good faith"); *Air Line Pilots Assoc., Int'l v. United Air Lines, Inc.*, 663 F.Supp. 281, 284 (N.D.Ill.1987) (the court declined to award fees because the "law in this area is not well-developed").

or against an award of attorney's fees.[13] If other factors weigh in favor of a fee award, then evidence regarding defendants' ability to pay can be introduced in a separate hearing to determine an appropriate award.

*c.  The deterrent effect of an attorney's fee award.*  Because this case has not been resolved on the merits, it is unlikely other employer groups are going to be deterred from determining themselves exempt from COBRA.  Also, contrary to plaintiff's assertion that defendants admitted plaintiff's eligibility for COBRA coverage, even after voluntary settlement the parties still dispute this issue.  Therefore, this factor does not weigh in favor of a fee award.

*d.  The benefit to others or resolution of a significant legal question.*  Similarly, because the interpretation of the COBRA provision in question remains disputed, it is difficult to see how an award of attorney's fees in this case could benefit other employees.  *See Air Line Pilots,* 663 F.Supp. at 284.  Also, it is not clear plaintiff sought to benefit anyone other than herself.  As plaintiff points out in her pleadings she was pregnant at the time of her termination and she believed that she could not obtain other health insurance during her pregnancy.  It appears her motivation was to maintain health-care insurance during her pregnancy rather than to litigate the meaning of the COBRA exemption.

■   In conclusion, there is a legitimate question regarding whether the Bar had or has any duty to provide continued health-care insurance coverage to terminated employees.  Furthermore, the defendants in good faith negotiated, and entered into, a stipulation to continue this coverage during the lawsuit.  Although the original case raised a significant legal question, it has not been resolved by the settlement of this case.  Consequently, it is unlikely an award of attorney's fees would either deter other employers from determining their status exempt under COBRA or benefit any future litigants.

Therefore,

IT IS HEREBY ORDERED that plaintiff's motion for attorney's fees is DENIED.

---

**13.** *See Air Line Pilots,* 663 F.Supp. at 285 (the ability of a party to satisfy an award is not a sufficient basis for an award).