**John G. SABINA and Maria C. Sabina, etc., Plaintiffs,**

**v.**

**AMERICAN GENERAL LIFE INSURANCE COMPANY, etc., et al., Defendants.**

**No. 92–1499–CIV–ATKINS.**

United States District Court, S.D. Florida.

Nov. 5, 1992.

Mitchell Horwich, and Lawrence R. Metsch, Miami, FL, for plaintiffs.

Stephen T. Kissane, Blackwell & Walker, PA, Miami, FL, for defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS

ATKINS, Senior District Judge.

THIS CAUSE comes before the Court on plaintiffs, Maria C. Sabina and John G. Sabina's, September 2, 1992, Motion for Award of Attorney's Fees and Costs.

### BACKGROUND

The undisputed facts as set forth before and during the June 30, 1992, hearing can be summarized as follows.[1] Plaintiff Maria Sabina is the natural mother and Emergency Temporary Guardian of Elena Sariol ("Elena"). Maria Sabina is married to plaintiff John Sabina, who is Elena's stepfather. The three family members live together in Miami, Florida. Elena is profoundly retarded and disabled, the result of an eighth-chromosome abnormality which was diagnosed shortly after her birth.

Defendants American General Life Insurance Company ("American General"), Anthem Life Insurance Company ("Anthem Life") and Anthem Group Services Corp. ("Anthem Group") are insurance companies or corporations qualified to engage in business in Florida. Defendants American General and Anthem Life are organized and existing under the laws of a state other than Florida. Defendant Anthem Group is organized and existing either under the laws of a state other than Florida or under the laws of Florida. Defendants Anthem Life and Anthem Group are affiliates of American General; Anthem Life serves as underwriter and Anthem Group serves as third-party administrator of American General's group health insurance plan.

In 1983, John Sabina became a general agent for Gulf Life Insurance Company, which was subsequently acquired by American General. In 1985 or '86, John Sabina, as general agent, accepted American General's offer to participate in its group health insurance plan ("group plan"). When he and his family became covered under the plan, Elena, as the stepdaughter of John Sabina, began to receive substantial monthly benefits under American General's group plan.[2]

The general agency contract between John Sabina and American General was terminated effective December 31, 1990. American General sent letters to notify him of the termination the week before the termination. No such notice was sent to Maria Sabina or to Elena.

Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), which amended ERISA, John Sabina timely elected to purchase for himself and his family continuing coverage under American General's group plan after terminating his general agency contract with American General on December 31, 1990. On May 22, 1992, plaintiffs wrote to Anthem Group requesting an additional eleven (11) months of COBRA coverage beyond the eighteen (18) months being received for Elena.[3] On June 1, 1992, Anthem Group responded to the letter, rejecting plaintiffs' request. Anthem Group asserted that Elena was ineligible for the additional COBRA coverage under American General's group plan because, on January 1, 1991, she had not been receiving disability payments under the Social Security Act.

On June 26, 1992, plaintiffs filed a Motion for Preliminary Injunction. In their motion, plaintiffs asked that defendants American

---

1. At the June 30 hearing, defense counsel stipulated to the veracity of the facts alleged by plaintiff; however, defense counsel so stipulated only for purposes of the immediate relief sought and expressly reserved the right to controvert the facts at a later time.

2. In order for Elena to live at home with plaintiffs, she must be constantly attended by licensed practical nurses at a monthly cost of approximately $11,000. In addition, Elena receives approximately $1,300 worth of medications each month. Without the extension of COBRA coverage under American General's group plan, plaintiffs would be compelled by their limited financial resources to place Elena in an institution operated by the State of Florida. Based upon Elena's prior personal experience, such a placement would have gravely jeopardized her well-being and materially shortened her life expectancy.

3. This occurred prior to the COBRA termination date as dictated by 26 U.S.C. § 4980B(f)(2)(B)(i)(IV) (1991).

General, Anthem Life, and Anthem Group be preliminarily enjoined from terminating group health insurance coverage for Elena. The Court heard argument on plaintiffs' motion on Tuesday, June 30, 1992. At the close of the hearing, the Court granted plaintiffs relief by orally entering an order temporarily restraining defendants from terminating group health insurance coverage for Elena. The Court memorialized the temporary restraining order in an order dated July 1, 1992.

The complaint underlying the application for injunctive relief alleged an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended; specifically, that defendants wrongfully terminated group health insurance coverage for Elena.[4] Accordingly, the complaint sought the entry of a judgment declaring that Elena was entitled to an additional eleven (11) months of coverage under American General's group plan and an award of costs and attorneys' fees.

The parties agreed that the "qualifying event" in this case was the termination of the general agency contract between John Sabina and American General on December 31, 1990. However, they disagreed on the requirements for the COBRA extension. Plaintiffs contended that the statutory provision required only that they request the eleven (11) month COBRA extension before eighteen (18) months had passed following the qualifying event, namely the December 31, 1990, termination. However, defendants asserted that the statute additionally required the person seeking a COBRA extension to be determined disabled under the Social Security Act ("SSA") as of the time of the qualifying event. Defendants claimed that Elena was unentitled to the COBRA extension because she had not been found disabled under

the SSA as of December 31, 1990. Plaintiffs replied that the statute did not require a finding of disability under the SSA as of the qualifying event, particularly where, as here, plaintiff had been found disabled under the SSA both before and after the qualifying event occurred.[5] If such a finding was generally required, plaintiffs alternatively argued, it was not required here because defendants violated their fiduciary duty to Elena by not including notice of the requirement in their December 26, 1990, letter.

This Court, in granting the temporary restraining order, found that the plaintiffs had a substantial likelihood of success on the merits (1) because the statute did not require on its face that Elena must have been receiving SSA payments at the time of the qualifying event, commenting that the legislative history provided little guidance, (2) because Elena was disabled both before and after the qualifying event and therefore she was likely to be presumed disabled at the time of the qualifying event, and (3) because it was likely that defendants had a fiduciary duty to so inform plaintiffs in the December 26, 1990, letter to John Sabina.

Based on these arguments, the Court granted plaintiffs' Motion for Preliminary Injunction on July 1, 1992, temporarily restraining defendants from terminating group health insurance coverage for Elena. Six days later, defendants filed a Notice of Settlement explaining that the matters at issue in plaintiffs' Request for Preliminary Injunction had been settled and resolved by the parties thereby providing health coverage to Elena for the eleven (11) month extension period or until plaintiffs exhausted the lifetime maximum benefits available under the policy. However, the parties disagreed to plaintiffs' entitlement to attorney's fees and costs.

---

4. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) and (2).

5. Enclosed with plaintiffs' lawyer's May 22, 1992 letter to Anthem Group was a copy of a May 20, 1992, Report of Confidential Social Security Benefit Information, Form SSA-2458 (2-84), Block 10 of which noted the following:

Elena filed, as a disabled child, for Supplemental Security Income 9/8/75. She was found to

be disabled as of 9/1/75. Benefit checks were mailed to Sunrise School for Elena. Benefits were terminated 8/1/85 as returned checks indicated a change in living arrangements.

Also included with the letter was a copy of a Notice of Award, dated May 13, 1992, and issued by the Social Security Administration, confirming that Elena had been determined to be eligible for Supplemental Security Income payments under Title XVI of the SSA as of April 14, 1992.

## DISCUSSION

■ Both parties agree that the appropriate standard for determining whether an award of attorney's fees is required in an ERISA action is found in *Ironworkers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980). This standard enunciates five (5) factors which a court should consider in conjunction with a 29 U.S.C. § 1132(g)(1) attorney's fee motion:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 1266. These five factors "should guide but not control the district court's decision." *Nachwalter v. Christie*, 805 F.2d 956, 961–62 (11th Cir.1986). Each factor will be discussed separately.

### (1) Bad Faith

Courts have primarily focused on the first factor in this determination, and, where bad faith was not present, the courts were reluctant to award attorney's fees.[6] Plaintiffs allege defendants acted in bad faith solely by denying the Sabina's timely request for the COBRA eleven (11) month extension in full knowledge of the fact that Elena was disabled since birth. Plaintiffs do not allege that defendants have made any misrepresen-

tations,[7] nor do they allege any other malfeasance.[8]

Defendants explain that their decision not to provide Elena the additional eleven (11) month coverage under 26 U.S.C. § 4980B(f)(2)(B)(i)(IV) centered upon the class of beneficiaries sought to be protected by the statute. Defendants claim that the eleven (11) month extension was originally introduced to insure that qualified beneficiaries possessed uninterrupted health coverage between the time that COBRA ended (18 months after the qualifying event) and Medicare began (29 months after the qualifying event). Therefore, defendants assert, the class of beneficiaries sought to be protected was those disabled individuals who would later be eligible for Medicare benefits. Since Elena had not been declared disabled by the Social Security Administration as of the qualifying event, and in fact had never received a retroactive declaration of disability back to that date, defendants determined that Elena was not entitled to the COBRA eleven (11) month extension. Why defendants failed to bring forth this explanation in earlier proceedings is surprising.

■ The issue of the statute's correct interpretation is not before the Court. However, in order to decide whether or not plaintiffs should be awarded attorney's fees, the Court must determine whether defendants acted in bad faith. Here, defendants might have been incorrect in their interpretation, but even so, where there is error, there is not always bad faith.[9] In fact, some courts hold that an argument must be totally without merit to support a finding of bad faith.[10] Moreover, where a case is one of first impression ,or where there is little available

---

**6.** *Nachwalter*, 805 F.2d at 962; *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Construction Co.*, 932 F.2d 1443, 1453 (11th Cir. 1991); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 849 (11th Cir.1990); *Dixon v. Seafarers' Welfare Plan*, 878 F.2d 1411, 1412–13 (11th Cir.1989); and *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1572 (11th Cir.1985).

**7.** In *Curry v. Contract Fabricators Inc.*, 891 F.2d at 849, the court awarded attorney's fees to the plaintiff where the president of defendant corporation misrepresented the date that payments

were to begin and then fraudulently denied plaintiff his benefits in retaliation for his having accepted employment with a competitor.

**8.** *See Harrison v. UMWA 1974 Benefit Plan & Trust*, 941 F.2d 1190, 1193 (11th Cir.1991) (an attorney's fee award to plaintiffs was inappropriate where the lawsuit was frivolous).

**9.** *See Dixon*, 878 F.2d at 1413.

**10.** *Krogh v. Chamberlain*, 708 F.Supp. 1235, 1240 (D.Utah 1989).

legal authority, as it is here, a finding of bad faith is generally inappropriate.[11] Based upon the facts provided, the Court finds that defendants' action denying the COBRA extension were reasonable under the circumstances and did not constitute bad faith.

*(2) Ability to Satisfy an Award of Attorney's Fees*

Mere ability to pay is not conclusive in awarding attorney's fees, however, the relative ability of the parties to pay is relevant. *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587, 590 (9th Cir.1984). The evidence and briefs provide little help in clarifying the parties' ability to pay. Plaintiffs argue the defendants are two major insurance companies and, because of this, they can clearly afford an award of attorney's fees against them. Because this factor is of less importance in this case as the other four, the Court does not accept this argument as conclusive.

*(3) Deterrence to Others*

In this case, the parties have settled the substantive issues. Therefore, a decision awarding attorney's fees to plaintiffs would not provide deterrence to other persons not parties to this lawsuit, but, an award against defendants would deter entities such as defendants from opposing plan "participant claims if the amount of the claim and the reasonableness of the [participant's] claim are such that plaintiff's chances of success are great." *Smith v. CMTA–IAM,* 746 F.2d at 590. Additionally, if the issue of statutory interpretation of 26 U.S.C. § 4980B(f)(2)(B)(i)(IV) was decided, the class of beneficiaries might be further defined to provide guidance to individuals seeking the provision's benefits in the future.[12]

*(4) Benefit to All Participants or Resolution of a Significant ERISA Legal Question*

The Court does not need to guess whether plaintiffs were attempting to benefit all individuals eligible under the eleven (11) month COBRA extension or whether plaintiffs merely sought to protect their daughter Elena. Moreover, the issue of statutory interpretation is not before the Court due to the parties' settlement. Even if both or either were present and clear, this factor alone would not be dispositive in deciding whether plaintiffs should be awarded attorney's fees. Therefore, this factor does not aid the final determination.

*(5) Relative Merits of the Parties' Positions*

To ascertain the relative merits of the parties' positions, the Court must look to the final result obtained by the parties' settlement. In making the decision to award attorney's fees to a party prevailing by settlement, a court should be mindful of the broad remedial purpose of ERISA as defined in the preamble, 29 U.S.C. § 1001(b)—to protect beneficiaries of employee benefit plans.[13] Employees suing for reinstatement of benefits base their claims upon civil rights violations and, the Supreme Court has expressed that in civil rights cases, the "district court should focus on the significance of the overall relief obtained by the plaintiff . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 52 (1983). Also, plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. at 1939.

This circuit has not decided the issue of awarding attorney's fees when the parties settle the claim. However, other circuit and district courts haves heard and opined upon this issue in some detail. In *Smith v. CMTA–IAM,* 746 F.2d at 591, "Smith received a portion of what he brought suit to recover, and so crossed the 'statutory thresh-

---

11. *Operating Engineers Pension Trusts v. B & E Backhoe Inc.,* 911 F.2d 1347, 1357 (9th Cir.1990) (question unanswered in the circuit) and *Airline Pilots Ass'n Int'l v. United Air Lines, Inc.,* 663 F.Supp. 281, 284 (N.D.Ill.1987) (law in the subject area was not well developed).

12. *See Air Line Pilots Ass'n Int'l,* 663 F.Supp. at 284.

13. *See Nachwalter,* 805 F.2d at 962 and *Rodriguez v. MEBA Pension Trust,* 956 F.2d 468, 471 (4th Cir.1992).

old' entitling him to recover fees from the defendant." [14] Here, defendants agreed to everything plaintiffs requested—to continue Elena's health coverage for an additional eleven (11) months or until her expenses exceeded the lifetime maximum.

Plaintiffs' filing of the lawsuit resulted in the Court's imposition of a preliminary injunction, temporarily restraining defendants from terminating group health coverage for Elena. Initiating these legal actions appears to have caused a settlement favorable to the plaintiffs. This settlement allowed plaintiffs to receive *all* of what they brought suit to recover.

### CONCLUSION

Based on the foregoing reasons, the Court concludes that an award of attorney's fees to the plaintiffs is warranted. However, after careful review of both parties' memoranda, the Court finds that a reasonable award to plaintiffs is **$7662.00,** including court costs. Therefore, it is

ORDERED AND ADJUDGED that plaintiffs' Motion for Award of Attorney's Fees and Costs is hereby ***GRANTED*** in the sum of **$7662.00.**

DONE AND ORDERED.

---

**14.** *See also Cefali v. Buffalo Brass Co., Inc.,* 748 F.Supp. 1011, 1018 (W.D.N.Y.1990) ("When a plaintiff is afforded all or some of the relief sought by way of settlement, 'the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.'" *Id. quoting Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)); *Krogh,* 708 F.Supp. at 1240, *quoting Smith v. CMTA–IAM,* 746 F.2d 587, 590–91 (the *Krogh* court incorrect-ly cited *Kaholokula v. Hula Records, Inc.,* 746 F.2d 587 (9th Cir.1985), which is a single paragraph order beginning on the same page as *Smith* ); and *Petro v. Flintkote Co.,* 633 F.Supp. 10 (N.D.Ohio 1986) (ordering an award of attorney's fees where defendant voluntarily restored plaintiff's health insurance benefits after plaintiff sought a permanent injunction against defendant).